## The People *ex rel.* James M. Wallace

### *v.*

## The Sterling Burial Case Manf. Co. *et al.*

1. Corporations—*by-laws binding, if adopted by all parties in interest.* Where the charter of an incorporated company provides that the corporate powers of the company shall be exercised by a board of directors or managers, who may adopt by-laws for the government of the officers and affairs of the company, a by-law adopted at the first meeting of the stockholders, all of whom were present and participated therein, and who were the only persons interested in the company, either as officers, managers or stockhold-

ers, is binding, notwithstanding they may, in the adoption thereof, have designated themselves as stockholders, instead of managers.

2.   ESTOPPEL—*stockholder is estopped to deny validity of by-law which he assisted to adopt.*   Where a stockholder in an incorporated company participates in the adoption of by-laws and acts, and acquires rights under them, and, through his instrumentality, they are held out to the public as the laws of the corporation, and outside parties acquire rights in the corporation, on the faith of the validity of such by-laws, such stockholder is estopped to deny their validity.

3.   STOCK—*issued in violation of law is void.*   Stock issued in violation of the law under which the company is incorporated is illegal and void, and the corporation can not be required to transfer the same upon its books, notwithstanding it may have been issued with the consent of all the stockholders of the company at the time.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Messrs. SACKETT & BENNETT, for the appellant.

Mr. W. E. LEFFINGWELL, and Messrs. HENRY & JOHNSON, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a petition, in the name of the people, on the relation of James M. Wallace, for a *mandamus* to compel the Sterling Burial Case Manufacturing Company to allow him to transfer, on the books of the company, fifty-two shares of its capital stock to himself, and to require the company to issue certain other shares for dividends, which he claims have been declared upon said shares in stock.

An answer was filed to the petition, the material portions of which were put in issue by pleas interposed by the petitioner, and upon a hearing on the evidence the *mandamus* was denied.

It appears, from the record, that the corporation was organized on the 16th day of December, 1872, under the act of April 18, 1872, entitled "Corporations." When the corporation was organized, its capital stock was declared to be $30.000, consisting of three hundred shares of $100 each.   On the 16th

day of December, 1872, Henry Hoover subscribed $19,250 to the capital stock of the company; Jonas Windom, $4250; Charles Saxton, $4000; and Silas S. Anckmoody, $2500. Hoover paid upon his subscription $5875, and the company issued to him one hundred and sixty-five shares of what purported to be full paid shares of stock, for the amount which he had paid.    To the other three parties who had subscribed for stock, the company issued what purported to be paid up stock, in the same proportion upon which they had actually paid; the whole amount paid on the subscriptions being $9250, for which they received the three hundred shares representing the entire $30,000.    Subsequently, the four persons composing the corporation adopted a by-law increasing the capital stock to $60,000.

The corporation, finding that it could not induce others to take stock in the company while the fictitious stock was out, on the 3d day of October, 1873, at a meeting of the company, adopted a resolution requiring all the fictitious stock to be returned, delivered up and canceled.

In pursuance of this action, all the stockholders, except Hoover, returned the fictitious stock by them held, and it was canceled.    Hoover, however, transferred eighty-three of the shares by him held to Louisa Hoover, thirty shares to Frank Maynard, and the remaining fifty-two shares to the petitioner, Wallace.

A number of questions have been presented and discussed by the attorneys in this case, but, in the view we take of the facts presented by the record, we are inclined to the opinion that a disposition of the question whether the 12th article of the by-laws was legally adopted, and was in force when the stock issued, will settle the legality of the stock, and the rights and obligations of the parties in regard to its transfer upon the books of the company.

The respondents set up, in the answer, that, by the 12th article of the by-laws of said corporation, it is required that the president and secretary shall sign and issue certificates of stock only upon payment of the full amount of such stock,

and that the said Henry Hoover did not pay to the said corporation the full amount of said stock, nor any part thereof, except for nine shares, to-wit: those described in the following certificates: No. 10, for two shares; No. 13, for one share; No. 15, for one share; No. 16, for one share; No. 14, for one share; and No. 22, for three shares; which said shares were fully paid for; and the shares so numbered, they are ready and willing to be allowed to be transferred upon the books of said corporation. But as to all the other shares of stock described in the relator's petition, they aver that the same were issued without any consideration whatever having been, or to be, paid therefor; that the same were and are fictitious, and were issued to the said Henry Hoover without authority, and in direct violation of the articles of incorporation, and the by-laws thereof.

To this portion of the answer, the relator replied that the said 12th article of said by-laws had not been adopted and was not in force, at the time the said certificates of stock, in the petition mentioned, or any of them, were issued and delivered to the said Hoover.

Section 6 of the act under which the company was organized provides: "The corporate powers shall be exercised by a board of directors or managers, provided the number of directors or managers shall not be increased or diminished, or their term of office changed, without the consent of the owners of a majority of the shares of stock. The officers of the company shall consist of a president, secretary and treasurer, and such other officers and agents as shall be determined by the directors or managers, and the directors or managers may adopt by-laws for the government of the officers and affairs of the company."

It is true, the record of the proceedings of the company, introduced in evidence, says the by-laws were adopted at the first meeting of the stockholders after the company was organized, which, as appears, was held on the 26th day of December, 1872. But at this time, it appears that Windom was president, Hoover treasurer, and Anckmoody secretary, and they, in connection with Saxton, all being present, and being

the only persons who composed the corporation or had any interest therein, either as officers, managers or stockholders, prepared and adopted the by-laws.

The corporation, when the by-laws were adopted, consisted of but four persons. These four were not only stockholders, but were the officers and managers. The mere fact, therefore, that they designated themselves stockholders in the adoption of the by-laws, instead of managers, can not affect the validity of the proceedings. The stockholders were the officers and managers of the corporation, and the managers were the stockholders.

Had the corporation consisted of say twenty stockholders, who had elected five of their number managers or directors, in such a case, no doubt, the act under which the company was organized would require the by-laws to be adopted by the managers or directors; but here, the stockholders and officers are the same persons, and when they all met and adopted a code of by-laws for the government of the company, to hold that the proceedings were void merely on the ground that they failed in the record to style themselves managers, would give more prominence to nice, technical distinctions, where no practical benefit would result, than we feel called upon to give. These by-laws were adopted by the persons who were in fact the managers of the corporation. The company never had any other code of by-laws, except so far as they were subsequently amended to meet the necessities of the company as its business increased.

There is another view that might be taken of the question. Hoover assisted in the adoption of the by-laws. He acted and acquired rights under them. Through his instrumentality they were held out to the public as the laws of the corporation. Outside parties have acquired rights in the corporation, on the faith of the validity of the by-laws. Under such circumstances we are inclined to hold that he is now estopped from denying the validity of a code of by-laws which he himself adopted and held out as valid; and as the relator, Wallace, stands in the

shoes of Hoover, so far as the shares of stock are concerned, he is in no position to dispute the legality of the by-laws.

The position of the relator in this case is not only peculiar, but inconsistent with itself. He prays for a *mandamus* to compel a corporation to transfer stock on the books of the company, under and by virtue of a code of by-laws which he is compelled, in order to obtain the relief asked, to urge have never been legally adopted. We can not sanction a position so inconsistent, but we are satisfied the by-law in question was properly adopted; and as it provides that the stock certificates can only be issued on the payment of the full amount of stock, it necessarily follows that these fictitious certificates issued to Hoover without payment were illegal, and of no force or effect whatever.

But it is urged, that as this stock was issued under an agreement of all the stockholders in interest at the time, although shares were issued for double the amount actually paid, the overissue would not be fraudulent or void.

A reference to a few provisions of the act under which the company was organized, will, we think, dispose of the question.

The 13th section requires the corporation to keep, at its principal office, correct books of account of all its business.

The 18th section prohibits, under a penalty, the exercise of corporate powers without complying with the provisions of the act, before all stock named in the articles of incorporation shall be subscribed in good faith.

The 21st section prohibits the making of false reports or statements of the affairs of the corporation.

Can it be said this company kept correct books of its affairs, when the books showed a subscription to the capital stock, purporting to be valid, for $30,000, when, by a secret agreement, this was mostly fictitious? The books represented the shares of stock worth $100 each, and that Hoover had a certain number of shares of paid up stock, when, in truth, a larger portion of these shares had never been paid for and were not to be paid for.

We are satisfied the arrangement under which the overissue

of stock was made was contrary to the spirit of the act under which the company was organized, and that all stock issued without payment was illegal and void, and the corporation could not be required to transfer the same upon its books.

The decision of the circuit court will be affirmed.

*Judgment affirmed.*