## GILCHRIST TRANSP. CO. v. PHENIX INS. CO.

(Circuit Court of Appeals, Sixth Circuit.  May 15, 1909.)

### No. 1,888.

**1. INSURANCE (§ 146\*)—CONSTRUCTION OF CONTRACT—GENERAL RULES.**

While it is a rule of construction of insurance policies that words of exception or limitation of liability are to be strictly construed against the insurer, and forfeiture avoided if possible, yet if the language used by the parties has a plain meaning, and is not inconsistent with other clauses or provisions of their contract, effect must be given to it.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 294–297; Dec. Dig. § 146.\*]

**2. INSURANCE (§ 283\*) — AVOIDANCE OF POLICY FOR BREACH OF CONDITION — "CHATTEL MORTGAGE."**

A vessel is a chattel, and a mortgage thereof a "chattel mortgage," within the meaning of a provision of a policy of insurance thereon that it shall be void "if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 283.\*

For other definitions, see Words and Phrases, vol. 2, pp. 1098–1106.]

**3. INSURANCE (§ 283\*)—AVOIDANCE OF POLICY FOR BREACH OF CONDITION—INCUMBRANCE BY CHATTEL MORTGAGE—"PRESENT INCUMBRANCE."**

A mortgage on a vessel to secure a debt of the mortgagor is a "present incumbrance" by a chattel mortgage, within the meaning of a provision of a policy of insurance on such vessel making it void, in case of such incumbrance, so long as the debt secured is outstanding, although it is not in default.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 283.\*]

**4. CORPORATIONS (§ 474\*)—POWER TO MORTGAGE—BONDS ISSUED IN PLEDGE.**

The power given corporations by Rev. St. Ohio, § 3256, to borrow money and issue its notes or bonds therefor secured by mortgage, includes the power to pledge its bonds secured by mortgage to secure the payment of another of its obligations, and the delivery of such bonds in pledge to a trustee is an issue of them, and renders the mortgage a present incumbrance, which continues so long as the debt remains unpaid.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 474.\*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Harrington Putnam, for plaintiff in error.

H. D. Goulder and T. H. Duncan, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

SEVERENS, Circuit Judge.  This is an action brought by the plaintiff in error upon a policy issued by the defendant, insuring the steamer Yakima, her tackle, apparel, etc., against loss or damage by fire.  The policy was issued May 5, 1905.  The steamer was damaged by fire on the 13th day of June following.  The insurance company denied its liability upon the ground that the policy was void because

of a condition in it upon the existence or occurring of which the policy was to be or became void. The condition was in the following language:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage."

This action having been brought, the insurance company defended upon the ground that the vessel was so incumbered at the date of the policy. The parties stipulated in regard to the facts, and, waiving a jury, submitted the cause to the court. The finding of facts by the court was identical with the stipulation of the parties. It is unnecessary to give a statement, verbatim, of the whole of these findings, and we abstract only so much as is needful to the determination of the question or questions presented by the controversy, as follows:

"Third. On or about the 4th day of May, 1905, the said defendant, in consideration of a premium of fifty dollars ($50.00), paid to it by the plaintiff, issued and delivered to the plaintiff the defendant's certain policy of insurance, a true copy of which, together with all agreements or stipulations indorsed on or added to the same, is annexed to the petition marked 'Exhibit A' and is hereby made a part hereof."

Exhibit A is a standard fire insurance policy, insuring the Yakima, her tackle, etc., for one year. It contained, among other conditions to its validity, the condition against incumbrance by chattel mortgage above recited.

"Fourth. Plaintiff was the sole and unconditional owner in sole possession of the steamer Yakima, her hull, awnings, apparel, furniture, boats, equipments, engines and boilers, machinery, connections, and appurtenances thereto belonging on board or attached to said vessel in said policy ('Exhibit A') mentioned, free of any interest, lien, or incumbrance therein or thereon existing in favor of any other person or persons, corporation or corporations, whatsoever, on the 1st day of July, 1904, and thereafter at all times down to and including the 13th day of June, 1905, except to the extent, if any, disclosed by the facts in this stipulation set forth."

Fifth. The damage to the Yakima by fire.

"Eighth. On the 1st day of July, 1904, the plaintiff executed and delivered a certain instrument in writing, bearing date on said day, a true copy of which (omitting all enrollments, save that of the Yakima, which omissions are by consent) marked 'Exhibit B,' is hereto attached and made part hereof, to the Cleveland Trust Company, of Cleveland, Ohio, a corporation duly organized and existing under the laws of the state of Ohio, and authorized and empowered to act as trustee under such an instrument in the manner provided therein, and on the 6th day of July, 1904, said instrument was recorded in the office of the collector of customs in the port of Cleveland, Ohio, in Book 24, pages 67 to 179, inclusive, of Vessel Mortgages.

"Ninth. The plaintiff never issued, sold, or otherwise disposed of or parted with the possession of any of the bonds mentioned in said instrument, Exhibit B, except that on the 6th day of July, 1904, it pledged and delivered eighteen hundred and twenty-five (1,825) of said bonds, and on the 4th day of August, 1904, it pledged and delivered one hundred and fifty (150) of said bonds, with said the Cleveland Trust Company as trustee. All of said bonds so pledged were duly certified by the trustee as required by said instrument Exhibit B, and a true copy of each of said bonds, except that the serial number of each was different, is hereto attached, marked 'Exhibit C,' and made a part hereof."

The bonds were in the ordinary form of negotiable coupon bonds, payable to bearer. The mortgage or deed of trust (Exhibit B) is a mortgage of as many as 66 vessels, among them the Yakima, to secure the payment of bonds of the company of even date to the amount of $2,000,000. There is nothing in it, so far as we can see, which is so far peculiar as to require special attention for the present purpose.

"Tenth. All of said bonds so pledged and delivered were pledged with the Cleveland Trust Company under and pursuant to a certain instrument, a true copy of which is hereto attached, marked 'Exhibit D,' and made part hereof, to secure payment of certain promissory notes of plaintiff then outstanding amounting on July 6, 1904, to the sum of seven hundred and thirty thousand dollars ($730.000.00) and also to secure payment of certain other promissory notes of plaintiff intended from time to time thereafter to be made by the plaintiff, evidence of all of which notes was duly furnished and certified by plaintiff to the trustee, as required in said 'Exhibit D.' Said bonds have ever since remained so pledged with the Cleveland Trust Company to secure such notes of the plaintiff, and the total amount of the notes so secured has never at any time exceeded the sum of seven hundred and ninety thousand dollars ($790,000.00), of which indebtedness part was to the Cleveland Trust Company and part to other persons and corporations, part of said indebtedness existed at the time of the pledging of said bonds, and part was created at the time of or subsequent thereto. Said notes were payable at different times, not exceeding in any case six months from their date, and as they have from time to time fallen due have been duly paid or renewed, so that none of them has at any time become unpaid or in default. Any payment of or on account of said bonds securing said notes or any thereof or the coupons thereto attached has never been made or demanded."

"Thirteenth. The defendant was not informed and did not in fact know any of the facts set forth in the eighth, ninth, tenth, eleventh, and twelfth articles of this stipulation until after the aforesaid fire and loss, nor were any of such facts mentioned in the proofs of loss served by plaintiff."

Enough has been stated to show the general character of the mortgage or deed of trust securing the bonds and of the pledge by virtue of which the bonds were delivered to the Cleveland Trust Company. References will be made to particular stipulations in the last-mentioned instrument in the course of this opinion. The court below was of opinion that the defense was established, that it was valid in law, and that judgment should go for the defendant. Judgment was entered in accordance with this finding.

Counsel for the plaintiff in error urge that the judgment should be reversed upon grounds stated in their brief, which as there summarized are:

"That the policy should be strictly construed against the defendant, and a forfeiture avoided if possible; that a vessel mortgage is not such a chattel mortgage as the policy intended; that the making and recording of the general trust mortgage was not of itself a breach of the policy conditions; that the pledging of the bonds did not create a present incumbrance under the bonds and mortgage, and, the pledge debt never having become in default, an incumbrance by mortgage within the meaning of the policy never arose."

These we will consider in their order.

1. It is urged that the principle of construction which should be applied to the policy is that:

"Words of exception or limitation of liability in an insurance policy are to be strictly construed against the insurer, and forfeiture avoided if possible."

And Continental Ins. Co. v. Vanlue, 126 Ind. 410, 26 N. E. 119, 10 L. R. A. 843, Dilleber v. Home L. Ins. Co., 69 N. Y. 256, 25 Am. Rep. 182, McMaster v. Ins. Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64, and May on Insurance, § 175, are cited. We think the law is in substance correctly stated by counsel. Yet we must add that if the language used by parties has a plain meaning, and is not inconsistent with other clauses or provisions of their contract, effect must be given to it. The court cannot ignore express stipulations in order to obviate a hardship. It is to be observed, however, that upon the facts of such a case as this it would be unfair to press the rule of strict construction to its utmost limits. Here were two intelligent and perfectly competent parties. It is right to infer that the quality of the insurance had its counterpoise in the price paid for it. The insured knew of the existence of the incumbrance, while the insurer did not; and it was undoubtedly a condition material to the risk.

2. It is insisted that:

"Although a vessel is personal property, yet it is not such personal property, and a vessel mortgage is not such a mortgage, as the chattel mortgage clause in the standard policy had in view."

We cannot accede to this proposition. The word "chattel" is of no special significance when applied to a mortgage of chattels. The word itself, says Burrill, "is a very comprehensive term in our law, and includes every species of property which is not real estate or a freehold"—a definition borrowed from 2 Kent's Commentaries, 340. Besides, the parties to this contract of insurance were dealing with the steamer as a chattel, a thing which might be mortgaged as a chattel. It is said by counsel, as if to distinguish it, that a vessel is sui generis, and is the subject of special legislation, which may be conceded. But that proves nothing. Many things which are undoubtedly chattels have such peculiarities. To hold that these words do not mean what in plain and readily apprehended significance they do mean is to nullify that stipulation in the contract. This we have no right to do, except in a case where the stipulation is so inconsistent with the dominant purpose that it must necessarily give way.

3. It is further said that:

"The principle is well settled that a mortgage, although of record and nominally a lien, is not an incumbrance by mortgage, within the meaning of the policy clause, unless also the mortgage indebtedness is actually owing under the obligation which the mortgage undertakes to secure."

If by this is meant that there must be some valid existing obligation to support the mortgage, we agree. But if, as we suppose, it is meant that if the obligation which the mortgage purports to secure is contingent merely, and has not yet become absolute, there is no incumbrance by the mortgage, we cannot assent. A mortgage, unless there is in it an express stipulation to pay the debt, always rests upon a contingency—a contingency that the debt be not paid at maturity. But, notwithstanding the liability of the mortgage is contingent until the default in payment of the debt secured, and in that event will never become absolute, it is still an incumbrance from the beginning. Of course, after the extinguishment of the debt, the mortgage is defunct

and ceases to be an incumbrance. But so long as there is a possibility that the debt will not be paid, or somehow satisfied, the incumbrance of the mortgage remains. These propositions are so well established as not to require further argument, and yet they seem sufficient to remove the tabulam in naufragio on which the counsel relies.

4. The last ground taken is that:

"The pledge by plaintiff in error of its bonds, in order to secure other obligations than those evidenced by the bonds which the mortgage was to secure, did not create a present incumbrance under the bonds and mortgage, and did not forfeit the policy."

This contention is equally hopeless. It is doubtless true that a mere additional promise by a debtor to pay his own debt is a vain thing. But not so if the additional promise to pay is itself secured by some new security. In that case the new promise may be used as a link to connect the new security to the old debt. However, there is no need of circuity. It is now well settled that a corporation may lawfully issue to a creditor its bonds secured by mortgage in pledge for the payment of another of its obligations. This appellant was authorized by its charter to issue and sell its bonds to raise money for, or otherwise promote, the purposes of its incorporation; and it has been held that this includes a power to pledge its own bonds for the payment of its debt, upon the principle that the greater includes the less. It was so held by this court in Farmers' Loan & Trust Co. v. Toledo & S. H. R. Co., 6 U. S. App. 469, 54 Fed. 759, 4 C. C. A. 561. In that case the bill was filed to foreclose a mortgage on the defendant's railroad given to secure its bonds. The bonds had been delivered by the defendant to a bank in pledge to secure the payment of a loan. An intervener, claiming to have an interest in the mortgaged property either as a judgment creditor having a lien or as the equitable owner of shares in the stock of the railroad company, sought an annulment of the bonds and mortgage and the pledge thereof upon the ground that the railroad company had no power to make them. The court held that the bonds, the mortgage, and the pledge were all valid and ordered a decree enforcing them. In the opinion, delivered by Judge Jackson, it was said in reference to the pledge, that:

"It admits of little or no question that under said section 3352, How. Ann. St. Mich. and said resolution, there was ample authority to pledge the bonds as collateral for the money borrowed of the First National Bank of New York. Under the New York statute, from which section 3352 of the Michigan law is evidently taken, it is settled that under authority to borrow money, and to issue and dispose of bonds in connection therewith, there is the right to pledge such securities as collateral for the sums borrowed"—citing Duncomb v. Railroad Co., 84 N. Y. 190.

The powers given to such corporations as the Gilchrist Transportation Company by the Ohio statutes are not less ample than those given by the laws of New York and Michigan. Among those statutes are these:

Section 3239, Rev. St. Ohio:

"Corporation Thereby Created, and Its General Powers. Upon such filing of the articles of incorporation, the persons who subscribed the same, their associates, successors, and assigns, by the name and style provided therein, shall thereafter be deemed a body corporate, with succession, and power to

sue and be sued, contract and be contracted with, acquire and convey at pleasure all such real or personal estate as may be necessary and convenient to carry into effect the objects of the incorporation, to make and use a common seal, the same to alter at pleasure, and to do all needful acts to carry into effect the objects for which it was created."

Section 3256:

"May Borrow Money on Bond and Mortgage. A corporation may borrow money, not exceeding the amount of its capital stock, and issue its notes or coupon or registered bonds therefor bearing date any rate of interest authorized by law, and may secure the payment of the same by a mortgage of its real or personal property, or both."

A like decision was made by the Circuit Court of Appeals for the Fourth Circuit in William Firth Co. v. South Carolina L. & T. Co., 122 Fed. 569, 59 C. C. A. 73. And in several state decisions the doctrine stated in Farmers' Loan & Trust Co. v. Toledo & S. H. R. Co., supra, has been approved and applied. Lehman v. Tallassee Mfg. Co., 64 Ala. 567; Nelson v. Hubbard, 96 Ala. 238, 11 South. 428, 17 L. R. A. 375; Morris Canal Co. v. Fisher, 9 N. J. Eq. 667, 64 Am. Dec. 423; Morris Canal Co. v. Lewis, 12 N. J. Eq. 323. And see 10 Cyc. 1170, par. 2; 1 Morawetz on Corp. § 349.

The delivery of bonds in pledge for the security of a debt is an "issue" of them. They come under an obligation. They cannot be recalled, as in the case of one having the possession, merely, subject to the order of the owner. The mortgage was given to the Cleveland Trust Company. It was an incident of the debt manifested by the bonds, and would pass to the holder of the bonds, and constantly attend upon them, whether it should be formally assigned or not. Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313. If the debt be not paid, the pledgee may sell the bonds on giving notice to the pledgor, and the purchaser will take the mortgage as well as the bonds, and may proceed to enforce the one by foreclosure and the other by an action at law, or he may do both.

The finding by the court is that the debt for which the bonds and mortgage were pledged has never been paid. Thus, from the date of the pledge and the delivery of the bonds, the mortgage has continued to be an incumbrance on the vessel. It is an incumbrance in the sense that any mortgage is an incumbrance, and it is in fact immaterial whether its liability had become absolute by default in the payment of the debt, or not, since the issuance of the policy.

The judgment of the Circuit Court must be affirmed, with costs.