## J. V. BEAZELL, Appellant, v. FARMERS MUTUAL INSURANCE CO., Respondent.

In the Kansas City Court of Appeals, June 11, 1923.

1. **INSURANCE: Corporations: Mutual Companies: Constitution: By-laws: Members of Mutual Insurance Company Held to Have Inherent Right to Repeal, Amend or Enact New Constitution and By-laws.** Under section 6464, Revised Statutes 1919, authorizing mutual insurance companies to incorporate and exempting them from the provisions relative to general insurance companies, *held* that the members thereof have the right to make their own constitution and by-laws, and being the governing body, there being no statute forbidding them from doing so, have the inherent right to repeal, amend or enact a new constitution and by-laws, if it is done substantially in accordance with their own organic law established for their government and not violative of any principle of natural justice.

2. **CORPORATIONS: By-Laws: In Absence of Statute on Subject, no Particular Mode for Enactment of By-laws is Necessary.** In the enactment of by-laws, mandatory provisions of the governing statute, as to the mode of enactment must be substantially complied with or the by-laws will be invalid, but where the statute is silent on the subject, no particular mode of enactment is necessary; a by-law may be adopted or modified either orally or in writing, or by uniform course of proceeding or usage and acquiescence.

3. ———: ———: **Where By-laws Adopted by Wrong Body Were Subsequently Ratified by Proper Body, Held Equivalent to Adoption by Proper Body in First Instance and Thereby Valid.** Where by-laws are adopted by the wrong body, as by a board of directors when the statute vests the power solely in the members of the corporation, the subsequent ratification in proper form by the proper body is equivalent to the passing or adoption of the by-laws by such body in the first instance.

4. ———: ———: **Constitution and By-laws of a Mutual Insurance Company Can be Made Part of Its Insurance Contract by Reference.** The constitution and by-laws of a mutual company can be made a part of the contract of insurance by reference.

5. **EVIDENCE: Presumption: Members of Mutual Insurance Company Presumed to Know Provisions of Articles of Incorporation and By-laws.** Members of a mutual insurance company are presumed to know the provisions of its articles of incorporation and by-laws.

Beazell v. Farmers Mut. Ins. Co.

6. **INSURANCE: Contract: Construction: Forfeiture: Forfeiture is Not Allowed if Any Other Construction Permissible, But Plain Terms of Contract Cannot be Disregarded.** A forfeiture is not to be allowed if any other construction of insurance contract is permissible, but the plain terms of the contract cannot be disregarded.

7. **———: By-laws: Provision of By-laws Rendering Void Insurance, if Other Insurance is Taken Out Without Insurer's Consent, Held Valid and Reasonable.** A provision of the by-laws that the insurance will be void if additional insurance is taken without insurer's consent, is valid and reasonable.

8. **———: Appeal and Error: Where Policy Was Rendered Invalid by Insured Taking Out Additional Insurance Without Consent of Insurer, It was not Necessary to Return Premium to Enable Insurer to Defend on That Ground.** Where policy of insurance was in force and effect until additional insurance was taken out without insurer's consent, rendering it invalid, the insurer could deny liability on that ground without returning premiums, and especially where no point was made nor issue raised regarding it.

ON MOTION FOR REHEARING.

9. **INSURANCE: By-laws: Construction: By-law of Mutual Company Held to Prohibit Additional Insurance Unless Written Consent Thereto was Obtained.** Where by-law of mutual insurance company provided that no property should be insured for more than three-fourths of its actual cash value at the time of its insurance and any excess should be void, *held* same had reference to the insurance written by defendant company and not insurance in general or by other companies, which was expressly prohibited by another provision of the by-laws, unless defendant's written consent thereto was obtained, *held* it was no defense to forfeiture, or waiver thereof, that other insurance had been procured without consent, but that the total amount thereof did not exceed three-fourths of the value of the property.

Appeal from the Circuit Court of Livingston County.— *Hon. Arch B. Davis,* Judge.

AFFIRMED.

*Paul D. Kitt* and *Joseph D. Stewart* for appellant.

*Schmitz & Marshall* for respondent.

TRIMBLE, P. J.—As its name indicates, the defendant is a farmers' mutual insurance company; and this suit is on its policy of fire insurance for $1500 issued on the 17th of September, 1918, and running for five years, upon a barn which was destroyed by fire October 14, 1921.

Defendant refused to pay the loss on the ground that plaintiff, after the issuance of the policy in suit, obtained additional insurance in another company without notice to or consent of defendant in writing; whereby it is claimed that under section 25 of defendant's by-laws, the policy in suit became void on the date such additional insurance was obtained. A jury being waived, the case was tried by the court and judgment was rendered for defendant. Plaintiff has appealed.

It is conceded that additional insurance to the amount of $1500 was obtained on June 22, 1921, without notice to or consent of defendant.

Defendant was incorporated in July, 1891, under the provisions of article 4, chapter 89, particularly section 5909 of said chapter, Revised Statutes 1889, which section authorized any such mutual company to incorporate by filing a copy of its constitution, by-laws, etc., with the Secretary of State, and provided that such companies should be exempt from the provisions relative to general insurance companies. Said section 5909, Revised Statutes 1889 is now section 6464, Revised Statutes 1919.

Neither the Constitution nor the by-laws of defendant, as thus organized, forbade the taking of additional insurance or required the written consent of defendant in order to obtain the same. On the contrary, additional insurance, without defendant's knowledge or consent, was impliedly permissible, for article 15 of the Constitution provided that:

"Not more than fifteen hundred dollars shall be taken in any one risk and in no case to exceed two-thirds of the cash value of the property insured, including the insurance of other Companies. In case of other insur-

ance, this company shall only pay its *pro rata* of two-thirds of the value of the property lost.''

Article 4 provided for an annual meeting of the members to be held at the town of Dawn, Mo., on the first Saturday in December, at 9 a. m., ''or at such time and place as a majority of such meeting may determine, for the election of officers, and the transaction of other busi-ness.''

Article 7 provided that: ''If for any reason the an-nual meeting is not held at the time designated, the pres-ident may call a meeting for the election of officers, etc. Vacancies occurring in the board shall be filled by the board until the next election.''

Article 6 gave the board of directors ''power to pass by-laws for the management and efficient working of the company, any of which may be altered or repealed at any annual meeting.''

It seems that only one meeting, that at which the company was organized, was ever held at Dawn. The records of the company seem to have been poorly kept, recorded in private books and carried about in the Sec-retary's pocket and many of them are now lost. But it appears that on November 20, 1891, at a special meeting of the members, the place of the annual meeting was changed to Chillicothe, and notice was sent to all mem-bers of such change and the first annual meeting was held at Chillicothe, in December, 1891, and all subsequent meetings of the members, whether annual or otherwise, were held at Chillicothe. From 1912 to 1915 the an-nual meetings were held in September.

At a special meeting of the members held on March 28, 1916, a new Constitution was adopted, in which the above quoted article 15 was omitted, and the former Con-stitution and any by-laws in conflict with the new Con-stitution were repealed.

Article 6 of the new Constitution provided that: ''The Board of Directors shall have power to adopt rules, regulations and by-laws, and to alter, change, repeal or

amend the same and perform all other necessary acts for the efficient management and work of the company;"

Article 7 provided that: "An annual meeting of the members of this company shall be held at Chillicothe, Livingston county, on the first Saturday in September of each year, for the election of directors hereof, and the transaction of other business of this company."

On August 10, 1916, at a meeting of the *board of directors,* a set of by-laws was adopted.

Section 2 of the new by-laws provided that: "No property shall be insured for more than three-fourths of its actual cash value at the time of its insurance and any excess insurance shall be void."

Section 25 of said new by-laws provided that: "If any member of this company has other insurance whether the same be prior, concurrent with, or subsequent to the insurance issued by this company, on any property which is covered in whole or in part by any policy of insurance issued by this company, then the policy issued by this company shall be, and become, null and void, whether such other insurance be valid or not, unless the insured shall notify the Secretary of such other insurance, in writing, and shall have the consent of this company, endorsed on the policy issued by this company, by the Secretary hereof; and when such written consent is given, then this company shall be liable for its *pro rata* part of such loss or damage sustained by the insured on the property insured in each of the companies."

At the Annual Meeting in September, 1916, the new constitution, as well as the by-laws adopted by the board of directors in August preceding were "approved." The record of this annual meeting of the members shows that:

"A copy of the new constitution and by-laws was called for and the same was produced and read to the members present by the Secretary. A number of questions were asked regarding the same and some explanations were made   .   .   .

Beazell v. Farmers Mut. Ins. Co.

A motion was made and carried that the new Constitution and by-laws be approved and the Secretary be instructed to send to each member of this company a copy of the same by mail and that this meeting adjourn to meet the first Saturday in November.''

The new Constitution and by-laws were filed with the Secretary of State in November, 1916.

Appellant contends that under the original Constitution all the *general* business of the company relative to its organization, form of government and rules governing the subjects it would insure and the liability it would assume therefor, must be transacted at the *annual* meeting of its *members;* that in the event no annual meeting was held, a *special* meeting could, under article 7, be called by the president, but that the special meeting was for the *election of officers only.* Consequently, appellant urges that a new Constitution could not be adopted at a special meeting, such as was the meeting of March, 1916, at which the new Constitution was adopted, and therefore article 15 of the old Constitution is still in force and the new Constitution never had any force or validity; and since the provision, avoiding a policy if additional insurance be taken out without the consent of the company, exists only by virtue of the new by-laws passed by the board of directors pursuant to authority attempted to be conferred upon them by the new Constitution, such provision as to additional insurance is of no effect and wholly invalid; that while article 16 of the old Constitution gave the board of directors power to pass by-laws as were for ''the management and efficient working of the company,'' this did not refer to nor authorize such as fixed the liability of the company to its members, especially a by-law such as this one which was contrary to article 15 of the original constitution.

It will be observed that article 4 of the original Constitution in reference to the annual meeting provides that it is ''for the election of officers and the transaction of other business'' and article 7 provides that if the

annual meeting is not held, the president may call a meeting "for the election of officers, etc." It may be that even in the organization of such mutual companies by laymen not versed in the niceties of the law, the abbreviation "etc." cannot be allowed to refer to and mean "the transaction of other business" as that phrase is used in the section concerning the regular annual meeting. And, therefore, it may be that the Constitution could not be amended nor a new one adopted at a special meeting even though, as was done in this case, due notice was given of the calling of said meeting and of the fact that it was for the purpose of voting on a new Constitution, and even though there was no provision in the old Constitution expressly requiring changes in the Constitution to be made at annual meetings, nor anything in the Statute providing how the Constitution and by-laws should be adopted or changes therein made.

Furthermore, it may also be (we do not say), that article 16, giving the board of directors power to pass by-laws for the "management and efficient working" of the company, does not include a by-law requiring the written consent of the company to the obtention of additional insurance and rendering the policy void if written consent is not secured. For, it likewise may be that a by-law requiring such consent conflicts with article 15 of the original Constitution, since it has been held that a provisions for the payment of a *pro rata* share in case of other insurance, waives a provision forbidding additional insurance without insurer's consent. [Bush v. Missouri, etc., Ins. Co., 85 Mo. App. 155, 159; Sheetz v. Iowa, etc., Ins. Co., 153 Mo. App. 620, 633.] However, it has been also held that the *pro rata* clause applies only in case the additional insurance is valid, that is, had the consent of the company, and therefore does not waive the provision where no such consent was obtained. [Myers v. German Fire Ins. Co., 166 N. W. 247; Nestler v. Germania Fire Ins. Co., 91 N. W. Supp. 29; Woolford v. Phenix Ins. Co., 190 Mass. 233.] The by-law did not

prevent additional insurance being taken out, but only provided that the company's consent thereto be obtained in writing. But, however this may be, and even if such a by-law cannot be deemed one for the "management and efficient working" of the company, and conceding, for the sake of the argument, all that is claimed by appellant, it will be observed that at the annual meeting held in September, 1916, the new Constitution and by-laws were laid before the members and "approved."

So that, even if a Constitution could not be adopted at a special meeting, and even if the by-law in question could not be passed by the board of directors alone, but must be adopted by the members, and, even if the by-law is in reality a matter that should exist in the Constitution as a part thereof and not merely as a by-law, still, as both the Constitution and by-laws were duly laid before the members at the Annual Meeting in September, and were "approved" by them, ought they or either of them to be held invalid?

Appellant lays great stress upon the word "approved" and urges that its strict technical meaning cannot be held to include that of *passage* or *adoption,* but can only mean the announcement of satisfaction with that which has already been done *with authority* by some one else, and that since the board of directors had no such authority, the word "approved" cannot apply to the new Constitution nor to the by-law in question and mean that they have been enacted. We think this is entirely too technical a view to take of the matter when applied to the record of the proceedings of a meeting which the law confides to an association of men untrained in such matters. The law gave the members the right to make their own Constitution and by-laws; and, the members being the governing body, and, there being no statutory provision forbidding them to do so, it would seem that having the right to make their Constitution in the first place, they would have the inherent right to repeal, amend, or enact a new one, provided, of course,

it is done substantially in accordance with their own organic law which they have established for their own government, and is not violative of any statutory provision nor any principle of natural justice.

Besides, the record shows that the members did more than merely "approve" what the board did. At the annual meeting in 1915, the President was given power to appoint a committee to confer with the board of directors "in regard to revising the Constitution and by-laws of this company." In February, 1916, a petition, signed by a majority of the board, was presented to the President to call a special meeting on March 28, 1916, "for the purpose of adopting a new Constitution and doing and performing all other acts and things incident thereto." Under section 1 of the old by-laws, it was the duty of the President to call special meetings when requested to do so by petition signed by three directors. At a meeting of the board on March 15, 1916, the committee, theretofore appointed by the president, met with the board. The record shows that: "The matter of a new Constitution was taken up and thoroughly discussed" and that "It was agreed by all present (which included plaintiff) that this company needed a new Constitution and they proceeded at once to formulate one. A copy of a suggested Constitution was taken up by the board and committee and the different sections were gone over carefully and discussed and such changes and insertions and additions as were deemed necessary were made. After all sections of said Constitution were gone over and such changes made as were deemed necessary, a motion was made and unanimously carried that the Constitution as formulated by the board and committee be adopted as a whole, and that such Constitution be presented to the members of this company at its special meeting on March 28, 1916, for their adoption." At the meeting March 28, 1916, the Constitution as thus prepared was read to the meeting and unanimously adopted. On April 29, 1916, at a meeting of the board, a motion was

carried that the president appoint two members of the
board to meet in conjunction with the President and Sec-
retary as a committee to draft by-laws for the company.
The plaintiff was appointed one of this committee. At
the meeting of the board on August 10, 1916, this com-
mittee submitted a set of by-laws which were adopted.
And then at the annual meeting of the members, as here-
tofore shown, the Constitution and by-laws were not
only ''approved'' but the Secretary was ordered to send
a copy of same to each member as the Constitution and
by-laws of the company, which he did.

In the enactment of by-laws, mandatory provisions
of the governing statute as to the mode of enactment and
the formalities to be complied with, must be substantially
complied with, or the by-laws will be invalid. But if the
statutes are silent, no particular mode of enactment is
necessary. In such case, a by-law may be adopted or
modified either orally or in writing or by acts as well as
words, and this may be evidenced by a uniform course of
proceeding or usage and acquiescence as well as by ex-
press vote manifested in writing. [14 C. J. 355.] And
where by-laws are adopted by the wrong body, as by a
board of directors when the statute vests the power
solely in the members, the subsequent ratification in
proper form by the proper body is equivalent to the
passing or adoption of the by-laws by such body in the
first instance, and they are for this reason valid by-laws.
[14 C. J. 354; People v. Sterling, etc., Mfg. Co., 82 Ill.
457.] In Graebner v. Post, 119 Wis. 392, it was held that
a set of by-laws approved at a stockholders' meeting
before the articles of association were recorded and
which was thereafter treated as the by-laws of the cor-
poration, will be regarded in law as the by-laws of the
corporation even though they were never formally adopt-
ed by the board of directors in accordance with the arti-
cles of incorporation.

For something like twenty years prior to the date his
barn burned, and for sixteen or seventeen years prior to

the issuance of the policy herein, plaintiff had been a member of the company, and for the larger portion of this time he had been an officer of the company, being a director and also treasurer. He was present at the Special Meeting of the members held March 28, 1916. As a member of the board, he was one of the committee appointed by the president to draw up the by-laws adopted by the board on August 10, 1916, and which were afterwards submitted to and approved by the members at the annual meeting in September following. After the adoption of the new Constitution he was elected a director in said company; and he admits he was present at the regular annual meeting in September, 1916, when the new Constitution and by-laws were ''approved.'' He also admits that as an officer of the company, he knew that· the company, during the years that have elapsed since the adoption of the new Constitution and by-laws in 1916, was and has been operating, managing and conducting its business, issuing its policies and performing its various functions, including the determination and payment of its losses, under and pursuant to the terms of said Constitution and by-laws of 1916; and during this time the company adjusted, settled and paid for a loss plaintiff sustained on his house a year and a half prior to the loss on his barn.

Whether these matters are sufficient to estop plaintiff from attacking the validity of the by-law in question or not, they clearly show that the business of the corporation and all the acts of its officers have been conducted in recognition of the fact that the Constitution and by-laws of 1916 were in force and controlling, and that no unfairness to plaintiff, on account of a lack of knowledge on his part as to what they contained, has been perpetrated. Besides, in the application for the policy in question, applicant agreed to ''abide by the rules, by-laws and constitution of said company now in effect or which may hereafter be adopted.'' It is well settled that the Constitution and by-laws of a mutual company can be

made a part of the contract by reference. [Miller v. Missouri, etc., Ins. Co., 168 Mo. App. 330, 334.] And the members of a mutual company are presumed to know the provisions of its articles of incorporation and by-laws. [14 R. C. L. 848, sec. 13.] One insured in a mutual fire insurance company is bound to take notice of its charter and by-laws, which are a part of the contract of insurance. [26 C. J. 81.]

There is no question but that a forfeiture is not to be allowed if any other construction of the contract is permissible. [Gilchrist, etc., Co. v. Phenix Ins. Co., 170 Fed. 279.] But the plain terms of the contract cannot be disregarded. [Dahms, etc., Co. v. German Fire Ins. Co., 153 Iowa, 168; Mormon, etc., Co. v. Heath, 205 Ill. App. 605.] A provision that the insurance will be void if additional insurance without insurer's consent, is valid and reasonable. [Rogers v. Howe Ins. Co., 155 Mo. App. 276.]

The policy in this case was in full force and effect until the additional insurance was taken out. It is not a case where it is contended the policy is void from the beginning. Consequently, return of premiums was not necessary to enable defendant to deny liability on the ground asserted. [Ohio Farmers Ins. Co. v. Williams, 112 N. E. 556.] Besides, no point was made on this matter, nor issue raised regarding it, in the trial court. Though the plaintiff paid no assessment after the one in 1920, which was prior to the violation of the terms of the policy, the original policy fee was deposited in court for plaintiff's benefit.

The judgment is affirmed. The other judges concur.

## ON MOTION FOR REHEARING.

TRIMBLE, P. J.—It is urged that the opinion does not pass upon one contention made by appellant, namely, that the proper construction to be placed on sections 2 and 25 of the by-laws, when taken together, is that they impliedly give consent to *other* insurance up to three-

fourths of the value of the property, and hence there is no need for consent to such other insurance, since the defendant is protected against liability for all above three-fourths of the value and, in case of other insurance, is liable for only its *pro rata* share of the loss up to that amount. We are unable to accept this view. Article 15 of the old Constitution did refer to other insurance; and provided that in case there was such, the company should pay only its *pro rata* part. But the new Constitution and by-laws do not refer to other insurance. The only *other* insurance permitted in them is that obtained *with the consent* of the company; and the *pro rata* liability of the company is only in cases "when such written consent is given." Section 2 does not directly or by inference refer to other insurance. Indeed the other paragraphs of said section show that the insurance there spoken of is insurance made by the defendant company and not insurance in general or by other companies. Said section has reference solely to the amount of insurance that the company itself may issue, and makes any policy the defendant issues, or its agents may write, void as to any excess above three-fourths of the value. The defendant is, by statute, exempt from the statutory regulations applicable to general insurance companies.

The barn was built in 1883 or 1885. Plaintiff claims its value at the time of the fire was $4000, while defendant had much evidence to show that at a liberal valuation it was worth only $1800 and not worth over $2000. If it was of this value, then the other insurance of $1500 covered three-fourths of its value. We are unable to find in the record what the court, sitting as a jury, considered the barn was worth. But without regard to this, we think that there is no ground for construing the two sections as impliedly providing for any other insurance without the company's consent. The *pro rata* clause, by the express terms of section 25, applies only when other insurance has been obtained by consent, and

cannot be taken as a waiver of forfeiture in case additional insurance is taken without the company's consent. [Myers v. German, etc., Ins. Co., 166 N. W. 246.]

The motion for rehearing is overruled. All concur.