**FARMERS MUTUAL FIRE AND LIGHTNING ASSOCIATION, Plaintiff-Appellant,**

v.

**Faye La VALLEE and Farmers Bank, Stover, Missouri, Defendants-Respondents.**

**No. KCD 26213.**

Missouri Court of Appeals, Kansas City District.

Oct. 1, 1973.

Motion for Rehearing and/or Transfer Denied Nov. 5, 1973.

W. R. Schelp, Bradley, Skelton & Schelp, Lexington, for plaintiff-appellant.

William F. Brown, Sedalia, for defendants-respondents.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment in a suit for declaratory judgment filed by the appellant insurance company wherein it asked for a declaration of its rights and obligations under a certain policy of fire insurance insuring the dwelling and other outbuildings of the respondent La Vallee, with a loss payable clause to the defendant Farmers Bank of Stover, Missouri, the holder of ·a mortgage on said property. The appellant's petition requested, in the alternative, that the court declare either: 1) it was not liable to insured in any amount under said policy, or 2) it was liable only for its ·pro rata share with other existing insurance for a fire loss which had occurred to said property. In the proceedings below, the court declared and determined the issues, as follows:

"That the insurance policy insuring the property as provided in the contract of insurance was neither void or suspended

at the time of the loss, but in full force and effect, however, plaintiff is found liable only for its pro-rata share of the loss suffered by defendant Faye La Vallee. * * * "

The court thus adopted the second alternative proposed by the insurer. It was from this declaration of pro rata liability that the insurance company has appealed. We affirm.

The facts pertinent to the decision of this matter are as follows:

The respondent, Faye La Vallee, was the owner of property outside of Stover, Missouri on which there was a dwelling and certain other improvements, upon which the Farmers Bank of Stover held a first mortgage. The property was insured against loss by fire with the Fireman's Insurance Company of Newark, New Jersey, which policy had been written by an agent for said company who was also an officer of the Farmers Bank and contained a standard mortgage clause to the Farmers Bank as mortgagee. The amount of this insurance is not shown and is not of importance in this appeal.

Seeking a lower premium, La Vallee contacted Marcus Orens, Secretary-Treasurer of the Farmers Mutual Fire and Lightning Insurance Company of Stover, Missouri and in response to this inquiry one Larry Ehlert, an agent for such company, called upon her on October 15, 1970. During the course of this interview Mr. Ehlert took an application for insurance from Mrs. La Vallee.

This application consists of a single sheet of printed form with spaces for the recording of information. The front thereof contains spaces for the name and address of the applicant, the term of the insurance (shown on the La Vallee application as from October 15, 1970 to October 15, 1975), the amount and details of coverage, the description of the property to be insured, and a space for the signature of the applicant. On the reverse side of the application are additional printed questions and spaces for answers but it does not contain any space requiring applicant's signature.

This record discloses that the agent Ehlert filled in part of the information required on the front of the application in pencil and Mrs. La Vallee signed on the line designated for applicant's signature. Other items of information on the front were later completed in ink by Mr. Orens when the application was delivered to him in his capacity as executive officer and underwriter for the appellant.

The pertinent parts of the back of the application appear as follows:

" Each of the Following Questions Must Be Answered in Full by the Applicant.

1. TITLE: Have you a fee simple title to all property described in this application? No

* * * * * *

2. Is the property mortgaged? Yes Who to? Farmers Bank of Stover Address Stover, Mo What amount? How many acres? 40

3. INSURANCE: Have you any other fire insurance on any of the property herein described? No

($2787.90 amount of mortgage) [1]"

The premium on this 5-year contract was to be payable by means of 5 annual premiums and the agent told Mrs. La Vallee that she would have 30 days in which to pay the first year's premium.

The policy was issued by the appellant on October 17, 1970 and delivered to Mrs. La Vallee. The policy provisions here in-

---

1. This is written in ink and the record shows it was added by Mr. Orens. All other portions of the "answers" were made by Ehlert in pencil.

volved are couched in the following language:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring:—

\* \* \* \* \* \*

Other insurance.—(d) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

relied upon by appellant as the basis of its claim that it has no liability, and

"Pro rata liability. This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved whether collectible or not."

which the respondent relies upon to assert the claim that appellant is responsible pro rata with Fireman's Insurance Company of Newark—a position which the court adopted in its declaratory judgment.

On October 28, 1970, a fire loss occurred to the insured property, respondent La Vallee reported the loss orally to the appellant and both Ehlert, the agent, and Orens, the executive of the appellant, undertook to investigate. It was only then that the appellant asserts it learned for the first time that other insurance was in force upon the property. It proffered a proof of loss to La Vallee in which it sought her agreement that nothing was due under the policy; she refused to execute this and thereafter under date of November 3, 1970, within the 30 days from the date of the policy, she sent a money order to appellant to cover the first year's premium. The company did not accept this premium but tendered its return by averment and by attaching the money order to its petition for declaratory judgment herein, filed December 29, 1970. It would seem to be highly pertinent here to note that Orens, the exec-

utive officer in charge of the underwriting procedures of the appellant, frankly stated in his testimony that the company never did actually deny liability on its policy.

The real decisional focus of this case involves the credibility to be accorded the testimony of two witnesses and inferences to be legitimately drawn therefrom upon the single point demonstrated below. The hard evidence on this point is sharply in conflict.

The plaintiff insurance company before trial made a Request for Admissions upon the defendant, La Vallee, one of which was the following:

"1(c) That the questions shown on the back side of said application were asked of you by the agent of Farmers Mutual Fire and Lightning Association and the Answers shown to such questions accurately represent your answers given to said agent at the time the application was completed."

In answer to this request, the defendant Faye La Vallee stated:

"This defendant specifically denies the statement in Paragraph 1c for the reason that this defendant was never shown the answer as the same appears and on the contrary has no knowledge, and had no knowledge of the existence of the condition referred to in Paragraph 1c prior to the filing of this action by plaintiff."

The sales agent, Ehlert, on the one hand, testified that (although he had worked only two months in the insurance business) he asked and obtained answers from La Vallee to each specific question on the front and back of the application and specifically testified:

"Q O.K. And in Question No. 3 would you please read the question as it appears there on the back side of Plaintiff's Exhibit No. 1?

A 'Insurance: Have you any other fire insurance on any of the property herein described?'

Q And did you ask Mrs. La Vallee that particular question?

A Yes.

Q And what was the answer that she gave you on October 15?

A No.

Q And is that the answer that you recorded on the application form?

A Yes."

On the other hand, respondent La Vallee testified:

"Q Tell the Court what happened out there.

A Mr. Ehlert came out there and he wrote up the policy. He did not ask me if I had another policy * * * I was not asked, absolutely not, if I had another policy.

\* \* \* \* \* \*

Q I am directing your attention to the reverse side (of application) * * * and ask you if you have ever seen that before?

A No, sir, all—not the back at all. The front I seen that because that is my signature in red ink.

Q Did he (Ehlert) show you the back?

A No.

Q Did he ever ask you the questions that is (sic) on the back?

A What is on the back? No, sir.

Q He did not ask you if you had any or additional insurance, is that correct?

A No, sir."

Insurer does not claim the policy was void but merely "suspended" during the period that the Fireman's insurance was in force. Mrs. La Vallee had testified that she intended to cancel the Fireman's policy but due to the illness of her husband had not done so. The following colloquy appears:

"THE COURT: In other words, you are contending basically, that had the defendant, Faye La Vallee, cancelled her insurance (Fireman's) the date (sic) before this loss, your company would have been liable?

MR. SCHELP: That is correct."

The appellant's only point upon appeal is stated in the following terms:

"The Trial Court Erred in Its Finding in Favor of Defendant For the Reason That There Was a Stipulation of Fact That Defendant Did Have Other Insurance on Property Covered in Whole or in Part by Appellant's Insurance Contract, and *That Appellant Had No Knowledge of Said Other Insurance Until After the Alleged Fire Loss,* and That the Judgment of the Trial Court Renders the 'Other Insurance Clause' of Appellant's Insurance Agreement Invalid and Not Binding upon the Defendants, Contrary to the Stipulated Facts and the Law of the State of Missouri." (Emphasis supplied)

The point that appellant "had no knowledge of said other insurance until after the alleged fire loss" is based upon an alleged "stipulation of facts". At the start of the trial the attorney for appellant made an extensive oral statement of facts which he denominated as a stipulation of facts agreed upon in chambers in order "to avoid a long lawsuit." The only part of this stipulation which deals with the knowledge (or lack of knowledge) on the part of appellant was the statement by counsel for appellant—

"* * * I would further ask that it be stipulated that plaintiff insurance company *was not told by Mrs. Faye La Vallee* of the existence of the insurance policy with Fireman's Mutual Insurance Company of Newark, New Jersey until after the fire." (Emphasis supplied)

This falls far short of the hypothesis that the appellant "had no knowledge" of such "additional insurance".

Mrs. La Vallee made no claim that she told appellant that she had other insurance—because she stated its agent never asked her. On the contrary, the agent Ehlert stated that he did ask her if she had other insurance and she told him "No." Thus, the credibility and truthfulness of the witnesses was for the trier of the facts and, as such, the trial court obviously accepted the version of Mrs. La Vallee. To this finding we give deference.

In reviewing a court-tried case, we review the record upon both the law and the evidence, determining the weight and value to be given to the testimony, and make our own findings of fact. However, it is our duty not to set aside the judgment unless it is clearly erroneous, having due regard for the superior opportunity of the trial court to see and judge the credibility of the witnesses. Rule 73.01(d) V.A.M.R.; Mission Insurance Co. v. Ward, 487 S.W. 2d 449, 451 (Mo.banc 1972); Dill v. Poindexter Tile Company, 451 S.W.2d 365, 371 (Mo.App.1970); Craft v. Politte, 454 S. W.2d 534, 535 (Mo.1970). Where the evidence is conflicting and where decision depends upon the acceptance of such oral testimony, we should defer to the findings of the trial court unless satisfied that the findings should have been otherwise. Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 850 (Mo.banc 1960); Mohawk Real Estate Sales, Inc. v. Crecelius, 424 S. W.2d 86, 91–92 (Mo.App.1968).

Deferring to the trial court's acceptance of Mrs. La Vallee's testimony as true, this case does not present a situation where the insured gave false information or was guilty of any misrepresentation of material facts in the application for insurance. The incorrect or false statement that there was no other existing insurance was incorporated in the application by the agent Ehlert from unknown or imagined sources, but not from any information furnished him by La Vallee and without her knowledge. Ehlert did not ask this question; she never saw the answer and did not sign the back page of the application.

The generally accepted rule applicable to this situation is well stated in 17 Appleman, Insurance Law and Practice, Section 9401:

"An insurer cannot avoid a policy by taking advantage of a misstatement in the application, material to the risk, not due to the insured's bad faith. It is the duty of an agent for an insurance company to prepare the papers under his supervision so that they will accurately and truthfully state the results of the negotiations, and the agent's failure to do so is, in legal effect, the fault of the company.

\*   \*   \*   \*   \*   \*

This rule applies with particular force where the false answers are inserted by the agent without the knowledge of the applicant, regardless of whether such statements be considered representations or strict warranties. Thus, where an application is prepared without even consulting or interrogating the insured, and the insured had no knowledge of the making of such statements, much less their verity, an estoppel is certain to arise.

Likewise, an insurer waives or is estopped to rely on representations contained in an application where the agent fills in the application without propounding any of the questions to the insured."

Two early Missouri cases support the above-stated rule. In Kribs v. United Order of Foresters, 191 Mo.App. 524, 177 S. W. 766 (1915), the insured sought life insurance from a fraternal benefit society. He was issued three certificates and paid the required assessments during his lifetime. After his death, the society refused to pay more than the amount of one certificate. The evidence was to the effect that the application was prepared by a doctor

who examined the insured for the society. During the examination the doctor failed to ask several questions concerning the insured's prior health. When the doctor reached those questions he referred to them as "tomfoolishness", directed the insured to sign the application and later inserted false information himself. In holding that the insurer was estopped from using the false information as a defense, the court said, 1.c. 769:

"While the insured is held to account for such statements and warranties as he makes, this is not true when it appears the statements were not laid before him so as to obtain his assent thereto, or that the answers were written by defendant's physician while acting for it. In such circumstances the insurer is estopped by the act of its physician to assert that insured consented thereto by merely signing the application at the instance of the physician leaving such blanks to be subsequently filled."

Likewise, in Sappington v. Central Mut. Ins. Ass'n., 229 Mo.App. 222, 77 S.W.2d 140 (1934), the defendant insurance company asserted as a defense material misrepresentations contained in the application. The evidence indicated that the agent for the defendant filled out the application after only asking the insured her name, age and beneficiary. The insured was then directed to sign the application and she did so. In reversing the lower court's judgment for defendant, the court said, 1.c. 147:

"The statements contained in said application, except as to the name and the age of the insured and the name of the beneficiary therein, while nominally only those of the insured, must be taken, in fact, as statements of the defendant itself and cannot, under the circumstances, be held to be the statements of the plaintiff or of the insured. Thomas v. Hartford Fire Ins. Co., 20 Mo.App. 150. The knowledge of the agent with respect to the application and the questions and answers appearing and made thereon, as to whether such questions were in fact asked and such answers were in fact made by the insured or as to the truthfulness or untruthfulness thereof, is imputed to the defendant and becomes the knowledge of the defendant; * * *"

See also: Voss v. American Mutual Liability Insurance Company, 341 S.W.2d 270, 278 (Mo.App.1960).

A recent case with facts strikingly similar to the instant case also supports this rule. In Western Casualty and Surety Company of Fort Scott, Kansas v. Wunderlich, 447 S.W.2d 1 (Mo.App.1969) the insurer filed an action for declaratory judgment praying that the court cancel an automobile insurance policy on the basis of a material misrepresentation of fact. Judgment was for the insured and the insurer appealed. The evidence was that the defendant requested automobile insurance and signed an application prepared by a secretary in the company's office. The defendant testified that the incorrect information was not on the application at the time he signed it but had apparently been inserted afterwards. On appeal the insurer cited Miller v. Plains Insurance Co., 409 S.W.2d 770 (Mo.App.1967) and Bearden v. Countryside Casualty Co., 352 S.W.2d 701 (Mo.App.1961), for the proposition that a material misrepresentation will render a policy void and that a person is bound to know the contents of an instrument he signs. The court rejected that argument, saying, 447 S.W.2d, 1.c. 3–4:

"We do not find the law as set forth above to be applicable to the facts in the case at bar. This is not a case where the applicant failed to disclose or gave false answers. It is a case where the applicant gave the correct information to the agent of the insurance company who then made a mistake in preparing the application. In other words, the applicant did not make the mistake. The agent made the mistake, and his principal is bound by it and is estopped to assert it

as a ground to void the policy under the circumstances here present."

Application of the theory of waiver or estoppel in cases involving similar factual situations finds substantial support in the case law of other jurisdictions. Blair v. Prudential Insurance Co. of America, 472 F.2d 1356 (D.C.Cir.1972); Jefferson Life and Casualty Co. v. Johnson, 238 Miss. 878, 120 So.2d 160 (1960); Cooley v. National Life and Accident Ins. Co., 172 Kan. 10, 238 P.2d 526 (1951); Universal Life and Accident Ins. Co. v. Barron, 269 S.W. 2d 467 (Tex.Civ.App.1954); Charlton v. Wakimoto, 70 Idaho 276, 216 P.2d 370 (1950); Emmco Ins. Co. v. Palatine Ins. Co. Ltd., 263 Wis. 558, 58 N.W.2d 525 (1953); Provident Life and Accident Ins. Co. v. Parks, 238 Ky. 518, 38 S.W.2d 446 (1931); Tingle v. Reserve Life Ins. Co., 260 So.2d 333 (La.App.1972); Trantham v. Canal Ins. Co., 117 F.Supp. 241 (E.D. Tenn.1953) aff'd, 220 F.2d 752 (6th Cir. 1955); Atlas Life Insurance Company v. Eastman, 320 P.2d 397 (Okla.1957); John Hancock Mutual Life Ins. Co. v. Schwarzer, 354 Mass. 327, 237 N.E.2d 50 (1968); Oberg v. John Hancock Mutual Life Ins. Co., 114 Ill.App.2d 152, 251 N.E.2d 918 (1969); Providence Washington Ins. Co. v. Rabinowitz, 227 F.2d 300 (5th Cir. 1955).

Further, a strong inference (strengthened by common knowledge) can be drawn from this record that the appellant did know, or should have known, of the existence of other insurance. Orens was the secretary-treasurer of appellant and apparently its chief executive officer and underwriter. He received the uncompleted application from his sales agent with two months experience and completed it out of the presence of Mrs. La Vallee, both above her signature and on the reverse side. The inexperience of the agent was manifest from a glance at the first question on the reverse side where he had declared that Mrs. La Vallee did not own the fee title to the property. However, Orens learned from a further perusal of the back of the application that a mortgage was held by the Farmers Bank. He stated that the figure of $2787.90 as to the amount due on the mortgage was from information secured by him from a Mr. Derks, head of the mortgage department of the Farmers Bank, and the party who had secured the original insurance, *after the fire loss* and presumably after the appellant had learned of the existence of other insurance from the adjusters for the Fireman's Insurance Company and had taken the position that appellant's policy was "suspended". Apparently, the trial court (with good reason) did not give credence to this testimony.

Orens had occupied his position with appellant for 16 years and surely during that tenure he had acquired the knowledge that lending agencies, particularly banks, loaning money on real estate, require that the note be secured by a Deed of Trust and that all such standard forms in Missouri provide for insurance coverage to secure the loan by a Standard Mortgage Clause in the event of loss by fire or otherwise. Orens knew of the bank's mortgage *before the fire* and that knowledge would carry with it, inevitably, the fact of existing insurance. In the ordinary course of sane business practice, Orens, as underwriter for appellant, would contact the bank-mortgage holder to ascertain the fact and status of the loan and existing insurance. It would be just such a situation as this that would call into operation the "Pro rata" provision of the appellant's insurance policy. The trial court, viewing the evidence and witnesses as trier of the facts, had ample reason to conclude that appellant had knowledge of the existing insurance before the loss.

The appellant argues that the judgment applying the "Pro rata" provision of the policy renders the "Other Insurance" provision invalid, contrary to stipulated facts and the law. We have heretofore pointed out that so-called "stipulated facts" are not at war with the trial court's judgment, and that this judgment does not result in a holding that the "Other Insurance" clause

is invalid—it is just not applicable in this factual situation.

Neither is the case law relied upon by appellant controlling in this case.

In Kirchner v. Farmers' Mut. Fire Ins. Co., 267 S.W.2d 390 (Mo.App.1954), the insured, Kirchner, requested additional insurance on the covered property from his carrier, Farmers. This request was refused and thereupon Kirchner applied for and obtained additional insurance from another company without notice to Farmers or securing from it a waiver of the "Other Insurance" clause. Farmers was without knowledge, fault or laxity. The case was tried before a jury and resulted in a verdict in favor of the defendant. The appellate court held Kirchner had violated the terms of his contract, that no waiver by the company had been shown, and upheld the verdict. No "Pro rata" provision was involved and the facts in Kirchner are obviously completely different from the matter before us.

Rogers v. Home Ins. Co. of New York, 155 Mo.App. 276, 136 S.W. 743 (1911) involved subsequently acquired additional insurance without notice to or consent of the original insurer and where no waiver of the policy provision requiring such consent and endorsement was shown.

Beazell v. Farmers' Mut. Ins. Co., 214 Mo.App. 430, 253 S.W. 125 (1923) involved the interpretation of the Constitution and By-Laws of the company requiring written consent for the acquisition of subsequent additional coverage.

None of these cases are in point.

For the reasons herein stated, we find that the judgment of the court below was based upon substantial evidence and sound legal principles and it is accordingly affirmed.

All concur.