BROOKS v. LONG.    (No. 1219.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 12, 1917.)

1. FRAUD ⊂⇒48—ACTION — ANSWER — HISTORY OF TRANSACTION—STATEMENTS.

Defendant in answer to a charge of fraud in the transaction out of which notes arose, being entitled to set out the history of the negotiations, may allege plaintiff's statements with reference to value of lots, constituting a part

of such history, though they constitute only the expression of an opinion.

2. EVIDENCE ⬤⟹121(7) — COMPETENCY — RES GESTÆ—CONVERSATIONS.

Agreements between plaintiff and defendant and between defendant and others having given rise to the notes sued on, what was said and done during both conversations is admissible as part of the res gestæ.

3. DAMAGES ⬤⟹89(2)—EXEMPLARY DAMAGES —BREACH OF CONTRACT.

Exemplary damages may not be recovered for breach of contract, where there is no element of fraud, willful negligence, or malice; and though fraud is shown, there must be additional injury.

4. BILLS AND NOTES ⬤⟹534, 543—ACTION— ATTORNEY'S FEES—COSTS.

Plaintiff in an action on notes providing for attorney's fees is not entitled thereto or to costs; the action being prematurely brought, and defendant having made tender when notes were due.

Appeal from District Court, Donley County; Hugh L. Umphres, Judge.

Action by J. M. Brooks against H. M. Long. From an adverse judgment, plaintiff appeals. Affirmed.

E. F. Ritchey and A. T. Cole, both of Clarendon, for appellant. H. B. White, of Clarendon, and S. A. L. Morgan, of Vernon, for appellee.

HALL, J. Appellant Brooks sued appellee Long upon two promissory notes, the first being for the sum of $150, due December 1, 1915, and containing a provision for the maturity of all notes of the same series at the option of the holder, in the event the maker should fail to pay any note of the series at maturity. There was a further provision for 10 per cent. attorney's fees. The second note, being of the same tenor and effect, was for the sum of $200, maturing December 1, 1916. It is alleged that both notes were given as part of the purchase money for certain lots in the city of Clarendon. Plaintiff prayed for judgment for the full amount of the notes, interest, and attorney's fees, and a foreclosure of the vendor's lien. It is further alleged that as part consideration for the conveyance of said lots appellee Long had promised to pay to the Methodist Church of Clarendon, on account of appellant Brooks, $250, subscribed by Brooks toward paying the debt then against the church building at Clarendon; that before the delivery of the deed appellee Long procured a receipt from the church authorities, reciting that $250 had been paid in cash for and on account of Brooks, when in fact no sum whatever had been paid, all of which was known by appellee Long to be false; and that by reason of such false representations and false receipt the delivery of the deed was procured. Appellant prayed that appellee Long be required to pay to said church the said sum of $250, with 6 per cent. interest after December 1, 1913, that

being the date upon which appellant conveyed the lots to Long. Appellant further prayed for $1,000 exemplary damages for deceit and fraud. Appellee Long answered by general denial, and specially alleged that the transaction in question with appellant was during the time appellee was pastor of the M. E. Church South at Clarendon; that when he became pastor of said church he found that there was an outstanding indebtedness against it of approximately $17,000; that in order to pay off and discharge said indebtedness it became necessary for him to solicit donations from among its members and friends; that among those solicited was the appellant, who informed him that he was unable to make a donation unless he could sell some town property situated in Clarendon and near the college; that all his property in said town was on the market, and he was preparing to remove from Clarendon as soon as he could sell; that appellant informed appellee of the location of said lots, stating that they were reasonably worth $750, and could be quickly sold for that amount; that if appellee would find him a purchaser for said lots at that price he would make a donation to said church of $250; that after conferring with the official board of said church and advising them of appellant's said proposition the said official board representing said church agreed that appellee would purchase said lots in his own name for the price mentioned, and that when they were sold for $750 the church should receive all the purchase money in excess of $500, the last-named amount to be evidenced by notes in question, being the amount to be paid appellant; that relying upon the representations and statements of appellant to the effect that said property was reasonably worth $750 and could be easily and quickly sold for that amount, and believing such statements were true, he purchased the property and executed his notes in question to the appellant, in order to aid appellant to make his donation to the church; that immediately after appellant conveyed the lots to him and delivered the deed he turned over to said church, through its official board, all equity he might have in said lots after paying off notes to the amount of $500; that he authorized the board of said church to sell said lots, and after paying said notes, to apply the excess to the payment of appellant's subscription. He further alleged that when the deed to the lots was delivered by appellant he requested that he be given something to show that he had made a donation to said church, whereupon A. M. Bevel, president of the official board of said church, prepared the receipt mentioned in plaintiff's petition, which was signed by J. S. Hayter, secretary and treasurer, which receipt recited the payment by appellant of $250, it being understood by appellant and said

church that said sum had not been paid, and was not to be paid until said lots should be sold at the price appellant had represented they could easily and quickly be sold for, viz. $750; that appellant had never agreed to make a donation to said church other than in the manner above set out; that when the first of the series of notes in question matured the lots had not been sold and said note was extended to December 1, 1915, that being the date of the maturity of the second note; that when the second note matured a purchaser for the lots had still not been found, notwithstanding diligent effort to that end, whereupon appellee informed appellant of such fact, and that he was unable to pay off both of said notes then due; that if appellant insisted upon being paid the full amount then due it would result in said lots being sold at forced sale, in which event they would not bring a sufficient sum to enable the church to realize anything out of it, but that if he would accept payment of one of the notes, being the note previously extended, as well as all interest then due, appellee could pay him that amount, and if he would extend the payment of the note maturing December 1, 1915, to December 1, 1916, the date of the maturity of the last note, the lots could probably be sold and the church realize something on them; that with that understanding an agreement to the end that the said church realize something out of the sale of the lots said note was extended to December 1, 1916; that payment of one of the notes was duly made, including all interest then due in line with said agreement; that this suit being filed on July 3, 1916, the note as extended being due December 1, 1916, the action was prematurely brought; that when the two notes in question became due the tender was made of the full amount, including interest, which tender was refused by appellant.

[1] Appellant specially excepted to that part of the defendant's answer which referred to appellant's representations concerning the value of the property in controversy because it was simply the expression of an opinion by appellant, and it does not appear in the answer that the appellee was not as well informed as to the value of the property as appellant. The court overruled the exception, and this ruling is made the basis of the first assignment of error. We sustain the ruling. Appellee did not seek a rescission or cancellation, nor was he suing for fraud or misrepresentation. It is shown that he tendered appellant the full amount due upon both notes on December 1, 1916, and upon appellant's refusal to accept the tender paid the amount into the registry of the court to abide the determination of the suit. Appellee had been charged with fraud and deceit, and in answer to such charge set out the history of the negotiations out of which the notes arose. The alleged state-

ments of appellant with reference to the value of the lots were a part of the negotiations, and therefore facts proper to be alleged.

[2] The third, fourth, and fifth assignments are based upon the court's action in permitting appellee to recite while on the witness stand the conversation he had with the board of officers of the church, wherein it was agreed that appellee should purchase the lots for $500, executing his notes, payable to appellant, for that amount, and that the lots should be sold by the church and the excess, if any, applied to the subscription of Brooks. The objection was made that the evidence was irrelevant and immaterial, and was a self-serving declaration made by appellee, not in the hearing of appellant and not shown to have been brought home to him before the deed was executed and delivered. The proposition is urged that self-serving statements, declarations made by a party to a business transaction to a third person, not in the presence or hearing of the other party, and not shown to have been brought to the knowledge of the adverse party before closing the transaction, are inadmissible. This evidence was introduced to sustain the allegation in defendant's answer, which set up the history of the transaction. The agreements made between appellant and appellee and between appellee and the church officials gave rise to the notes sued upon, and what was said and done during both conversations is part of the res gestæ and admissible as such. Mitchell v. Crossett, 143 S. W. 965; Memphis Cotton Oil Co. v. Goode, 171 S. W. 284; Naylor v. Parker, 139 S. W. 93; Britt v. Burghart, 16 Tex. Civ. App. 78, 41 S. W. 389.

[3] Appellant complains of the action of the court in submitting the case to the jury upon only one issue, as follows:

"Was there an agreement by plaintiff with defendant, through his agent, Slover, whereby plaintiff promised that he would extend the $150 note so as to mature at the same time the $200 note by its own terms matured?"

It is true that appellant sued for exemplary damages in the sum of $1,000, based upon the alleged fraud and deceit of appellee in promising to pay $250 to the church for appellant. The general rule is that for a breach of contract exemplary damages are not recoverable where there is no element of fraud, willful negligence, or malice. And even when fraud is shown there must be additional injury. Littlefield v. Clayton Bros., 194 S. W. 194. Aside from the testimony of appellant, there is no evidence in the case tending to show that appellee has been guilty of any fraudulent conduct or that he has failed to comply with the terms of his undertaking, as testified to by every witness except appellant. Appellant's contention is that appellee promised to pay to the church $250, which appellant had agreed to pay upon condition that the lots which were

afterwards conveyed to appellee could be sold for $750. It appears that the indebtedness against the church was secured by a collateral note signed by appellant and other church members, and that appellant's liability on the note amounted to $250. It is shown that through Long's efforts appellant's liability upon the collateral note has been discharged, and that appellant has a receipt signed by the proper officials of the church, acknowledging the payment to the church of the $250 subscribed by him. As a matter of fact, the $250 was never paid to the church officials in cash, but under the agreement between appellee and several members of the board the receipt was issued to satisfy appellant, and it was understood that the $250 would be paid as soon as the lots could be sold for $750. The church is not a party to the suit, and the record shows that the church authorities are satisfied with the arrangements and are making no claim whatever against appellant, either in regard to his liability upon the collateral note or the subscription of $250 which the conveyance in question was made to satisfy. Under this state of facts there is no element of fraud in the transaction, and since appellee did not breach the contract appellant was not entitled to recover any sum as exemplary damages. If the members of the official board of the church, after having receipted appellant for $250 as paid, are content to await the sale of the lots before receiving the amount of Brooks' subscription, it is not a matter with which either appellant or the court is concerned. There being no right to recover exemplary damages, the court was not required to submit it to the jury. Since the church was satisfied with the arrangement for the payment of the $250, and was not a party to the suit, the court could not properly submit any issue upon that phase of the case.

[4] The only remaining question was the right of appellant to recover attorney's fees and costs, and this depended upon whether or not the suit had been prematurely filed. Dr. Slover testified that when he paid off one note and $10 attorney's fees appellant agreed to extend the time of payment of the remaining note to December 1, 1916. It was further contended that in consideration of the agreement to extend the payment of the last note appellee would pay 10 per cent. instead of 8 per cent. interest, as provided by the writing. There is no conflict as to the amount paid under this agreement, but appellant denied having made any such agreement. The conflict between appellant and Slover raised the only issue which the court should have submitted to the jury, and this was resolved against appellant.

Some of appellant's assignments are not properly briefed, and we will not consider the remaining ones in the order presented.

What we have said disposes of all the material questions properly presented. The court submitted the only material issue warranted by the evidence.

Finding no reversible error, the judgment is affirmed.