### GRIFFIN et al. v. BURRUS.
(No. 1099—5342.)

Commission of Appeals of Texas, Section B. Feb. 19, 1930.

See, also, 292 S. W. 561.

Jas. A. Stephens, of Benjamin, and Carl W. Wade, J. Rob Griffin, and Phillips, Trammell & Chizum, all of Fort Worth, for plaintiffs in error.

Bean & Klett, of Lubbock, for defendant in error.

LEDDY, J. Defendant in error, J. R. Burrus, brought suit in the district court of Lubbock county against plaintiff in error John R. Griffin to recover damages alleged to have been sustained by reason of being induced to invest a large sum in stock in a corporation then in process of organization, which was afterwards organized as the American-Mexico Land & Cattle Company, the same being organized for the purpose of buying a large tract of land located in the state of Vera Cruz, in the republic of Mexico. Burrus alleged that he was induced to purchase such stock by certain false and fraudulent representations made to him by plaintiff in error Griffin.

On the 18th day of September, 1926, which was the last day of the August term of the district court of Lubbock county, no answer having been filed by plaintiff in error, judgment by default was rendered against him in favor of defendant in error for the sum of $30,000.

Plaintiff in error, by bill of review brought in the court in which judgment was rendered, sought to set aside the judgment by default, alleging that his failure to file an answer was through no lack of diligence on the part of his counsel, that said judgment was rendered upon request of defendant in error in violation of an agreement between the attorneys for plaintiff in error and defendant in error to continue said cause providing an answer was filed during such term of court, and that answer was in fact filed during the August term of court within a few hours after the judgment was rendered.

Plaintiff in error further alleged that he had a meritorious defense to the cause of action asserted in the cause; such defense being fully and specifically pleaded.

Defendant in error denied all of the allegations in the bill, and filed a cross-action in which it was prayed that, if the judgment by default was set aside, he recover damages on his cause of action against Griffin because of the fraud alleged to have been practiced upon him; said cause of action being fully set forth.

The trial was had with a jury. All of the issues on the merits of Burrus' cause of action against Griffin and Griffin's defenses thereto were submitted to the jury in the form of special issues; the jury answering all of them in favor of Burrus.

No issue was submitted to the jury on the question of plaintiff in error Griffin's negligence in failing to file an answer in the cause in which judgment by default was taken, nor was any request made by Griffin for the submission of such issue.

The trial court refused to set aside the judgment by default and to .enjoin the issuance of execution thereon, and the judgment rendered in the original cause was in all things confirmed.

Defendant in error insists that the trial court properly refused to set aside the judgment by default for the reason that plaintiff in error, having failed to request the submission of the controverted issue as to whether his failure to file an answer in the cause in which judgment by default was rendered was due to his lack of diligence, waived such issue; hence the trial court was without authority to set aside such judgment.

Plaintiff in error attempts to meet this proposition by asserting that the undisputed evidence showed his counsel believed they had an agreement with opposing counsel not to try the cause in which default judgment was rendered until the following term of court.

This contention requires a review of the testimony on the point. When properly analyzed, we think the testimony on such issue was far from being undisputed. In fact, it was so sharply conflicting that a finding either way would have been supported.

Mr. Griffin, representing plaintiff in error in the original cause, testified that Mr. Klett made such an agreement with him. Mr. Klett, representing defendant in error, denied the making of any such agreement, and there were numerous circumstances corroborating his testimony.

When district court convened on August 16th, it was shown that, when the original cause was called on appearance day, Mr. Klett stated to the court, in the presence of Mr. Marshall, a local attorney for Griffin, that no answer had been filed by the defendant, and insisted on such answer being filed. It seems Mr. Marshall took the position that defendant was not required to file an answer, since the order of the court overruling defendant's plea of privilege to be sued in Tarrant county was then pending on appeal. Mr. Klett called the trial court's attention to the decision of the Supreme Court of this state holding that the appeal from an order overruling a plea of privilege does not suspend the trial of the case on its merits. The court, however, took no action at that time. After this controversy between the attorneys in regard to filing the answer, Mr. Klett gave attorneys for Griffin further notice by writing them a letter on August 28th, sending the original of the letter to Marshall and Stewart of Lubbock, and a carbon copy to J. Rob Griffin, attorney at Fort Worth, who was one of counsel for plaintiff in error Griffin, in which he said, with reference to filing an answer in the case:

"I am giving you and Mr. Griffin this ample notice in advance so you will have plenty of time to come prepared and not be taken by surprise."

He did not receive any reply to that letter. About a week later, on September 3d, Mr. Klett again wrote Marshall and Stewart of Lubbock, sending a carbon copy to J. Rob Griffin, attorney at Fort Worth. This letter stated:

"Our last information was that defendant had failed and refused to file answer to the merits of the case.

"We realize it is your contention that the appeal of the order overruling the plea of privilege suspends trial of the case on its merits; but as you know we disagree with you on this proposition.

"Therefore, in all fairness, we respectfully put you on notice that we shall insist on trial of the case at the first opportunity."

Mr. Griffin did not reply to this letter, but on September 6th came out from Fort Worth to Lubbock and later went back to Fort Worth without communicating with Klett or filing an answer. Mr. Klett then called in person on Judge Marshall, and, in answer to inquiries, Marshall stated he had received Klett's letter, and shown it to Attorney Griffin, but that Griffin "did not say anything." Later Mr. Klett made a personal call at the office of Marshall and Stewart to talk with them in person about this letter, and to ascertain why they did not file their answer. Mr. Stewart indicated that very likely they might not continue in the case, as they had not agreed on the fee to be paid. Mr. Klett concluded that he should thereafter conduct his communications with Mr. John R. Griffin, and his attorney, J. Rob Griffin. On Wednesday morning, September 15th, at 9 o'clock, Mr. Klett wired John R. Griffin and his attorney, J. Rob Griffin, as follows:

"We notified you and Marshall and Stewart no answer had been filed for defendant in Burrus suit for forty-five thousand dollars. This is further notice that unless answer is immediately filed we shall seek trial and judgment at first opportunity. Present term ends next Saturday."

No answer was filed up to noon on Saturday. It appears that Marshall called Klett on the telephone on Thursday and informed him he had a wire from Griffin telling him to notify Klett he was going to file an answer after it was verified on Thursday, but it seems the same was not filed either Thursday, Friday, or Saturday morning before noon. Klett further testified that his client Burrus was an old man, 80 years of age, and that there was every indication that Attorney Griffin was endeavoring to defeat the

suit by all kinds of delay and dilatory tactics, and that, inasmuch as he had given the defendant and his attorneys repeated notification to file answer, he had done all that was required of him by law, and so on Saturday afternoon he had the case called up and obtained a judgment by default, and properly proved up his damages.

It seems that Judge Marshall did not continue as attorney in the case, and took no part in the trial in the court below, but was called as a witness by plaintiff in error. On cross-examination he testified: "I did not understand that (meaning the telephone conversation Thursday morning wherein Marshall notified Klett that he had received a telegram from Griffin's attorney saying the answer would be filed Thursday) as being any agreement between you (Klett) and me (Marshall) as to the filing, but merely a notice of what he (Griffin) was wiring me. I believe that was on Thursday morning, but I would not be sure about that. I know I phoned you as soon as I received that wire. I think there are two trains a day out of Fort Worth that bring mail, one leaving at night and one at noon out of Fort Worth, and a train leaving there at 10:40 at night gets here at 11:00 something next morning. I do not remember the time the other train leaves Fort Worth. A letter leaving Fort Worth at two o'clock in the afternoon on the Sunshine Special would reach Lubbock the following morning at about five o'clock in the morning. That answer evidently was not mailed out of Fort Worth on the two o'clock train in the afternoon to enable it to reach here on Thursday, because it did not reach here until Friday and it was sent by special delivery. It could have been delayed some after it reached here because it was delivered to me. I do not know whether that answer reached me Thursday or Friday. I do not remember whether I stated in our motion for a new trial that the answer did reach here on Thursday or not, but the answer would be the best evidence about that. If I stated that, my memory was better on it then, than it is now. I did file the motion for new trial on September 18, the date judgment was taken."

It was further admitted by Judge Marshall on cross-examination: "I never did have an agreement myself with Attorney Klett about a continuance of the Burrus Case. I did not have Judge Mullican postpone or continue the case at the August term of court. I tried to get him to but there was no order made."

Judge Marshall further testified that he had never known of more courtesy shown by one lawyer to an opposing lawer as Attorney Klett showed the defendant Griffin's lawyer, and on this point he testified: "As an attorney of Lubbock bar I will state that ordinarily a notice of a suit, in the way of a citation, is considered sufficient and legal notice and it is then up to the attorney for the defense to file the answer. It would have taken about ten minutes to file an answer consisting of a general demurrer and general denial and that would have prevented a judgment in default. I think, as an attorney of the bar, that Attorney Klett was fair and very courteous under the circumstances when he gave another notice in writing dated August 28." "I also consider that it was a matter of fairness and courtesy upon your part when you wrote the letter of September 3 calling our attention to the fact that we had failed and refused to file an answer. I consider the telegram of September 15, urging the filing and giving notice, a matter of courtesy and fairness from one lawyer to another." "I have been practicing law for about seventeen years. I do not recall a law suit where one lawyer had given the other side as many notices about filing an answer as in this case. I have never known of a Lubbock lawyer favoring a lawyer on the other side with as many notices as were served in this case and I cannot name a single case where that many notices were sent out one way or the other."

Attorney Griffin, representing plaintiff in error, replied, on September 15, 1926, to Klett's telegram of that date by a telegram to Marshall, reading as follows: "Please inform Bean & Klett that defendant will mail you answer in Burrus case Thursday after verification when it can be filed. Understand that court adjourns Saturday next and we do not want this matter considered during this term of court. Avoid possibility of hearing this term."

Mr. Griffin testified that during the August term in the courtroom he had an agreement with Mr. Klett to the effect that the case might be continued for the term if he would file his answer before adjournment, and that he relied upon such agreement, and his failure to file the answer was due thereto.

It is apparent from the above testimony that the issue as to whether Griffin's attorneys were lacking in diligence in filing an answer was one on which the testimony was very much in conflict. It seems that Mr. Klett repeatedly warned the attorneys for plaintiff in error to file an answer. Griffin, in his wire, urged Marshall to avoid if he could the possibility of having a hearing at that term of court, but made no reference to any existing agreement with Klett not to try the case at the August term. Neither did he make any reference to such an agreement when Marshall showed him Klett's letter of September 3d, indicating a positive intention to try the case at that term of the court.

The testimony being conflicting upon this issue, and the same constituting an independent ground for the relief prayed for, the failure to request its submission by plain-

tiff in error was a waiver thereof. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Whitehead v. Reiger (Tex. Com. App.) 6 S.W.(2d) 745.

█ Plaintiff in error insists that because the trial court submitted the merits of the case on special issues the effect of such action was to set aside the judgment by default. We do not concur in this contention. It was the duty of the plaintiff in error to see that all independent issues upon which a finding was necessary to entitle him to the relief sought should be submitted for the determination of the jury. No basis existed for setting aside the judgment until he had obtained a favorable finding on the issue as to whether he was excused from filing an answer because of an agreement with opposing counsel or because he was laboring under the mistaken belief that such an agreement had been made.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.