## FORRESTON GIN CO. v. WAXAHACHIE NAT. BANK. *.

### No. 928.

Court of Civil Appeals of Texas. Waco.

July 3, 1930.

Rehearing Denied Oct. 2, 1930.

S. B. Farrar and J. C. Lumpkins, both of Waxahachie, for appellant.

Mark Smith and J. T. Spencer, both of Waxahachie, and Frazier & Averitte, of Hillsboro, for appellee.

BARCUS, J.

This is the second appeal in this case; former opinion (Tex. Civ. App.) 271 S. W. 290. Appellee instituted this suit against appellant to recover on a trade acceptance dated October 28, 1927, for $3,701.93, payable 90 days after date, drawn by appellant on Ferris Watson, doing business under the name of Watson Cotton Seed Company. The cause was tried to the jury, and resulted in judgment being rendered for appellee for the amount sued for. It appears that Ferris Watson, under the name of Watson Cotton Seed Company, was engaged extensively as a breeder and seller of what was known as Acala cotton seed, during the year 1921, and in said name he made contracts with a large number of farmers in Ellis county to plant the Acala cotton seed, and agreed to pay them for the seed raised a $5 bonus per ton over the regular market price for ordinary cotton seed. He made arrangements with different gins, including appellant, to put the seed from the Acala cotton in a separate storehouse and pay the farmers, including said bonus, therefor as same was ginned. Watson agreed he would weekly pay the gin companies, including appellant, for the cotton seed they had ginned and paid for during the preceding week. Watson made arrangements with appellee bank to finance him in the handling of the cotton seed, and appellee did furnish the necessary money until about the 15th day of September, 1921, at which time Mr. Lasswell, for appellee bank, suggested to Watson that he have the gins accept, in lieu of cash, trade acceptances, payable in 30, 60, or 90 days, and that appellee bank would pay same upon presentation. In conformity therewith, appellant, on September 21st, drew a 60-day draft on Watson Cotton Seed Company for the sum of $3,-704.19, which appellee bank promptly paid. Again, on September 28th, appellant drew a separate draft on Watson Cotton Seed Company, for $2,451.86, due in 30 days, which appellee bank promptly paid. Again, on October 28, 1921, appellant drew a third and final draft on Watson Cotton Seed Company, for $3,701.93, due in 90 days, and presented same to appellee bank for payment, which it promptly refused, and returned same to appellant. On October 28, 1921, the draft for $2,451.86, dated September 28th, was protested by appellee bank for nonpayment by Watson, and the bank demanded payment thereof from appellant. Appellant, through its manager Mr. Godfrey, then took up with Mr. Watson and appellee bank the question of having said last draft paid to appellant, as well as the two first drafts paid to appellee bank.

Mr. Godfrey and Mr. Watson each testified, in effect, that the results of the negotiations resulted in a new contract being made on November 17, 1921, between the appellee bank, appellant, and Watson, whereby appellant would purchase from Watson 4,000 bushels of the Acala cotton seed at $1.-60 per bushel, which amounted to $100 per ton, or $6,400 for said amount of seed (ordinary cotton seed at said time was selling from $30 to $40 per ton), on condition and with the positive understanding and agreement that the $6,400 would be used first to pay the two original drafts amounting to about $6,200, and the remainder to be credited on the third draft, and that appellee bank would pay appellant for Watson the third draft and would release any claim it had against appellant on said drafts and would look alone to Watson for the money it paid appellant on said drafts or either of them. Appellant did purchase the 4,000 bushels of Acala cotton seed from Watson on November 17, 1921, and paid the $6,400 therefor. The $6,400 was paid to appellee bank and it used same to pay the two original drafts, including protest and other fees claimed by it, and the balance, $164.87, was credited on the third draft of $3,701.93. The record of appellee bank shows that on the day the draft in question was paid the bank sold to Watson a money order or exchange payable to appellant for the amount thereof. When the draft for $3,701.93 was originally drawn on October 28, 1921, by appellant, it was made payable to itself, and was indorsed by it in blank and sent through its correspondent to appellee bank for payment, and appellee bank refused to honor or pay same and returned it to appellant. At the time the appellant purchased the 4,000 bushels of cotton seed and paid the $6,400 on November 17, 1921, and received from appellee bank the full payment of the third draft, it left said draft with appellee bank with its indorsement thereon, and the record is silent as to whether any one at said time thought about the draft being so indorsed. When the draft became due 90 days after its

original date, to wit, January 28, 1922, it was protested for nonpayment, and thereafter this suit was instituted against appellant to recover thereon; Ferris Watson having in the meantime become totally insolvent and having obtained his discharge in bankruptcy.

On June 23, 1921, Mr. Watson gave appellee bank a mortgage on all the cotton seed that he might purchase or become the owner of under and by virtue of the contracts he had with the farmers and the various gin companies in breeding and ginning the Acala cotton seed, to secure his indebtedness to appellee bank as might be shown either by notes, overdrafts, bills of exchange, or otherwise. Some time in the fall of 1921, the date not shown, the Southland Cotton Oil Company made a contract with Ferris Watson which was acquiesced in and agreed to by appellee bank, under the terms of which all of the Acala cotton seed owned by Watson was to be purchased by the Southland Cotton Oil Company and paid for at the regular posted price of ordinary cotton seed plus a $3 bonus per ton, and same was to be stored by it in a separate warehouse in Waxahachie, and it was to allow Ferris Watson to take such seed as he (Watson) might want for the purpose of selling to his various customers for planting purposes for the year 1922, upon his paying to the Southland Cotton Oil Company the amount that it had originally paid therefor. In conformity with said contract, there were delivered to the Southland Cotton Oil Company by Watson between three and five thousand tons of said cotton seed. The Southland Cotton Oil Company paid Watson for all the seed which it purchased, and stored same in said warehouse per the terms of said contract, and Watson deposited all the money he received therefor in appellee bank. Among other cotton seed purchased by the Southland Cotton Oil Company between September 7 and 22, 1921, from Watson under said contract, was 628,925 pounds which appellant had ginned and for which Watson had paid the farmers. The Southland Cotton Oil Company paid Watson $39,750.31 for said 628,925 pounds of seed, and he deposited same to his account in appellee bank.

The cotton seed which appellant bank purchased from Watson on November 17th was not taken from the cotton seed that had been sold to the Southland Cotton Oil Company, but was taken from the seed held by Watson at Italy, Tex.

The only issue submitted by the court to the jury was: "Do you find and believe from a preponderance of the testimony that when on or about the 17th day of November, 1921, J. H. Godfrey, as manager of the Forreston Gin Company, the defendant herein, delivered the trade acceptance sued on herein to the plaintiff Waxahachie National Bank, that Lynn Lasswell, Vice-President of the plaintiff bank, agreed with said Godfrey that the defendant gin company should be released from all liability as an indorser on said instrument to pay the same at maturity?" which the jury answered "No."

Appellee bank excepted to the special issue given on the ground that same was irrelevant and immaterial, and, if answered in the affirmative, would not authorize the court to enter a judgment for the defendant (appellant).

Appellant excepted to said special issue because same was irrelevant and immaterial and was a general charge and was calculated to confuse and mislead the jury and was leading and called for a legal conclusion and only submitted an evidentiary issue and did not present the real issues in the case. In addition to the objections and exceptions urged, appellant requested the court to submit a number of issues presenting its various defenses, all of which were by the court overruled.

■■ Under its first proposition appellant contends that the trial court was not authorized to enter a judgment for appellee on the finding of the jury because there was no issue submitted and no finding made that would authorize same; its contention being that, since appellee based its right to recover upon the proposition that it was a holder of the trade acceptance in controversy in due course and for value, it was necessary for the jury to so find before the court could enter a judgment for appellee. The rule now seems to be well settled that all controverted issues of fact presenting either a right to recover or a defense are deemed waived unless submitted to the jury for a finding, and the trial court cannot make a finding on an independent controverted issue not submitted to the jury and base its judgment thereon. McCoy v. Long (Tex. Com. App.) 15 S.W.(2d) 234; Griffin v. Burrus (Tex. Com. App.) 24 S.W.(2d) 810. The testimony in this case as to whether appellee bank was in due course and for value the owner and holder of the trade acceptance in controversy as against appellant being a sharply controverted issue, the trial court was not authorized to enter a judgment for appellee without having submitted same to the jury for its determination.

Appellant further contends that its answer as well as the testimony raised the defense as to whether the trade acceptance was in truth and in fact actually paid on November 17, 1921, and further that its defense that appellee released it from all liability on said trade acceptance by having made a new and independent contract with it and Watson on November 17, 1921, under the terms of which appellee was to and would look alone to Watson for the payment of said draft and did at said time release appellant.

■ The law is well settled that all defenses pleaded and supported by testimony must at the request of defendant be submitted separately and affirmatively. Clearly, we think appellant's pleadings and testimony raised the above defenses, and the trial court should have submitted same to the jury for its determination. If, as a matter of fact, the trade acceptance was actually paid by Watson to appellant on November 17, 1921, 70 days before it was due, same was thereby, in so far as appellant is concerned, extinguished, and neither appellee, who knew said facts, nor Watson, could thereafter reissue the trade acceptance or place same on the market in such a way as to bind appellant as indorser. Section 119, Negotiable Instruments Act (Rev. St. 1925, art. 5939); Currie v. Trammell (Tex. Civ. App.) 289 S. W. 736 (pars. 1, 2). The testimony of Watson and Godfrey hereinbefore stated, and the fact that the record of the bank shows the cashier's check or draft used to pay appellant for the trade acceptance in controversy was purchased by Watson Cotton Seed Company and made payable to appellant was sufficient to raise the issue of payment.

■■ If the jury had found that the trade acceptance was not in fact paid, it would have been authorized under the evidence to find that at the time appellant purchased the $6,400 worth of cotton seed from Watson and paid the extremely high price therefor which was applied on Watson's debt to the bank, the bank agreed to and did release appellant from all liability on said draft and agreed to look alone to Watson for its payment. Section 119 of the Negotiable Instruments Act (Rev. St. 1925, art. 5939) provides specifically that a negotiable instrument may be discharged (1) by payment in due course by or on behalf of the principal debtor, or (4) by any other act which will discharge a simple contract for the payment of money. Our courts uniformly hold that a contract for the payment of money may be discharged by a new and independent contract entered into by the parties in lieu and in substitution for an original contract. 20 R. C. L. 373, 46 C. J. 583–610 and 622; Hall v. Wichita State Bank (Tex. Civ. App.) 254 S. W. 1036 (writ refused); Farmers' State Bank v. Cottingham (Tex. Civ. App.) 261 S. W. 426; Lockhart State Bank v. Baker (Tex. Civ. App.) 264 S. W. 566. Whether the new contract amounts to a "novation" is usually a question of fact to be determined by the jury. 46 C. J. 630; Strange v. Cooper Gro. Co. (Tex. Civ. App.) 4 S.W.(2d) 232, pars. 22–26, and authorities there cited.

■ Appellant assigns error to the action of the trial court in excluding from the jury the testimony of the witness Watson in answer to interrogatories 7 and 8, in which Watson gives a detailed statement of the contract which Godfrey for appellant offered to make with him (Watson) whereby he would purchase from Watson 4,000 bushels of the Acala cotton seed at $1.60 per bushel, and use the money paid therefor, to wit, $6,400, in liquidating or paying to the bank the two original drafts drawn by appellant on Watson, and which were paid to appellant by the bank if Watson would then pay the last draft, being the one in controversy herein, and the statement by Watson that he communicated said facts to Mr. Lasswell, the active officer in charge of the matter for the bank, and that the bank agreed to and accepted said proposition. We sustain this assignment. Said testimony was admissible tending to show what the real contract between the bank, appellant, and Watson was at the time the draft in controversy was paid to appellant on November 17th. As shown by the answers of Mr. Watson in said interrogatories, he gave in detail the terms of the contract which Godfrey for appellant had made, and he stated that he reported in detail the proposition as made to him by Godfrey to Lasswell, and that Lasswell, for the bank, agreed to said contract and authorized him (Watson) to so state to Godfrey. Said testimony was further admissible as an admission on the part of the bank. Jones on Evidence, § 1091; Brooks v. Long (Tex. Civ. App.) 199 S. W. 510; Memphis Cotton Oil Co. v. Goode (Tex. Civ. App.) 171 S. W. 284, and authorities there cited; Haskell v. Merrill (Tex. Civ. App.) 242 S. W. 331, par. 9.

■ Appellant assigns error to the action of the trial court in excluding from the jury the testimony of Godfrey as to the terms of the proposition he, as agent of appellant, made Watson, and which Watson stated he could not accept until he saw the bank and made arrangements with the bank for the money to pay the draft in controversy. We overrule this assignment. As stated above, the testimony of Watson as to what Godfrey told him and which he (Watson) testifies he communicated to the bank was admissible. Anything that Godfrey might have said to Watson which was not communicated to the bank could not affect or bind the bank and would not be admissible.

For the errors indicated, the judgment of the trial court is reversed, and the cause remanded.