### WAXAHACHIE NAT. BANK v. FORRESTON GIN CO.
### No. 1524—5837.

Commission of Appeals of Texas, Section A. Feb. 24, 1932.

Mark Smith and J. T. Spencer, both of Waxahachie, and Frazier & Averitte, of Hillsboro, for·plaintiff in error.

Jack Lumpkins and Bowd Farrar, both of Waxahachie, for defendant in error.

HARVEY, P. J.

This suit was brought by the Waxahachie National Bank against the Forreston Gin Company, as indorser, to recover on a trade acceptance held by the bank, subject to a credit of $164 shown on the instrument. The case was tried to a jury, and resulted in a judgment for the bank. The Court of Civil Appeals reversed that judgment and remanded the cause. 31 S.W.(2d) 355.

The instrument sued on was drawn by the gin company against Ferris Watson, in his trade-name of Watson Seed Company, on October 28, 1921, for the sum of $3,701.93. By its terms the instrument is payable to the order of said gin company ninety days after date, and it bears the indorsement of the gin company. Watson, who duly accepted the trade acceptance at the time it was drawn, is not sued, for the reason that since that time he has been duly declared a bankrupt and discharged from his liabilities. During the year 1921, Watson, under the trade-name of Watson Seed Company, was engaged at Waxahachie in the business of buying and selling cotton seed. At the beginning of the cotton season, he arranged with the Forreston Gin Company, among various other gins in that section of the state, to buy cotton seed from the farmers, and resell the same to him (Watson). For a while he paid cash for the cotton seed that was sold and shipped to him by the Forreston Gin Company under the above arrangement. Later on, in September, 1921, he got in financial straits, and was unable to pay cash for the cotton seed. He then arranged for the gin company to draw trade acceptances for the purchase price of such cotton seed as might be thereafter sold and shipped to him by the gin company, and about the same time he arranged for the Waxahachie National Bank to cash said trade acceptances. In pursuance of this new arrangement, the gin company, on September 21, 1921, shipped a lot of cotton seed to Watson,·and, for the purchase price thereof, drew a trade acceptance against Watson for the sum of $3,704.19, due 60 days after date, and on September 28th the company shipped to Watson another lot of cotton seed, and drew a second trade acceptance for the sum of $2,451.86, due thirty days after date. Both of these trade acceptances were formally accepted by Watson, were indorsed by the gin company, and were promptly cashed by the Waxahachie National Bank. On October 28th, the gin company shipped to Watson a third lot of cotton seed, and, for the purchase price,· drew a third trade acceptance against Watson, which is the one sued on here. This instrument was formally accepted by Watson, and indorsed by the gin company, but the said bank, about October 30th, refused to cash same. Meantime the second trade acceptance, which the bank held, fell due, and was duly protested for nonpayment, and payment was demanded of the gin company as indorser. About this time, the gin company, which still held the third trade acceptance, opened negotiations with Watson looking to the adjustment of matters relating to all three trade acceptances; and on November 17, 1921, said negotiations culminated in an agreement between the gin company, Watson, and the said bank. As a defense to this suit, the gin company alleges, in its answer, the above agreement, and the performance of its terms by the respective parties, substantially as follows: That it was agreed by and between said three parties that the gin company was to purchase from Watson a lot of cotton seed for the sum of $6,400 cash, and said purchase price was to be paid over by the gin company to the bank, and by the latter applied to the payment of the first and second trade acceptances, and the balance of said sum to be applied as a credit on the third trade acceptance; that the bank agreed to pay, for Watson, the unpaid balance of the last-mentioned trade acceptance; that the bank agreed to release the gin company from all liability under said trade acceptance; that said agreement was, at the time of said agreement, carried out by all parties, resulting in a complete settlement and satisfaction of the trade acceptance sued on, so far as the gin company was concerned. The testimony is undisputed that the gin company did, in the transaction of November 17th, buy the lot of cotton seed from .Watson, and pay over the purchase price to the bank, and that the latter applied all but $164 thereof to the payment of the first and second trade acceptances, and that said balance of $164 was applied as a credit on the third trade acceptance, and such credit was duly noted on the instrument; that the bank paid to the gin company the amount called for by the last-mentioned instrument less said credit of $164, and the gin company delivered said instrument to the bank, bearing the indorsement of the gin company; that, when the instrument fell due, according to its terms, it was duly protested for nonpayment, and the bank demanded payment by the gin company as indorser.

All the testimony as to what occurred in the transaction mentioned is oral and is in substantial accord, except in the following respects: Witnesses for the gin company testified that the bank agreed in that transaction to pay, for Watson, the third trade acceptance, less said credit; that the bank agreed

to release the gin company from all liability under said instrument; that the sum that was paid to the gin company by the bank was in payment of the said trade acceptance for Watson. On the other hand, witnesses for the bank testified that the bank did not agree to pay the instrument for Watson, or to release the gin company from liability thereunder; but that the bank simply agreed, in effect, to purchase said instrument, and did purchase same, and that the sum paid to the gin company by the bank was the purchase money therefor. It also appears, without dispute, that the sum that was paid by the bank to the gin company was represented by a cashier's check issued, at the time of said transaction, by the bank to the gin company, which check was duly paid when it was presented for payment. The purport of entries appearing on the stub in the draft register of the Bank is, substantially, that "Watson Seed Co. C/S" (meaning cotton seed) was the purchaser of said check from the bank; but aside from this entry there is no testimony indicating that Watson purchased said cashier's check from the bank. Watson testified as a witness in behalf of the gin company. He testified that, when the parties had reached an agreement, substantially as alleged by the gin company, he left the bank before the details incident to the closing of the transaction were concluded, and therefore knew nothing of what transpired after he left.

The case was tried to a jury, and the trial court submitted to the jury a single special issue, reading as follows: "Do you find and believe from a preponderance of the testimony that when, on or about the 17th day of November, 1921, J. H. Godfrey, as manager of the Forreston Gin Company, the defendant herein, delivered the trade acceptance sued on herein to the plaintiff, Waxahachie National Bank, that Lynn Lasswell, vice-president of the plaintiff bank, agreed with said Godfrey that the defendant gin company should be released from all liability, as an indorser on said instrument, to pay the same at maturity?" The jury answered "No."

In due season the gin company requested that the following special issue be submitted to the jury: "Did the Waxahachie National Bank pay the trade acceptance sued upon, to the Forreston Gin Company, for Ferris Watson, November 17, 1921?" This requested special issue was refused by the trial court.

■ It will be observed that this requested special issue relates to the matter of alleged payment of the trade acceptance, as distinguished from the release of the gin company from liability under the instrument, and therefore relates to a distinct defense pleaded by the company. As we have shown, there was parol testimony introduced by the gin company for the purpose of proving that, in the transaction of November 17th, the bank

paid the said trade acceptance for Watson; but, in our opinion, the trial court did not err in refusing this requested special issue.

■■ The trade acceptance was a negotiable instrument, and it bears the unqualified indorsement of the gin company, and it was so indorsed when delivered by the latter to the bank. Such indorsement constituted a new and substantive contract binding the gin company to the engagement that, on due presentment, the trade acceptance would be paid, according to its tenor, and that, if it be dishonored, and the necessary proceedings on dishonor be duly taken, the gin company would pay the amount thereof to the holder. R. S. art. 5936, § 66. The law reads this engagement into the indorsement contract, and parol testimony is incompetent to vary the terms of the contract thus made. Blucher v. Eubank (Tex. Com. App.) 5 S.W.(2d) 972; Cresap v. Manor, 63 Tex. 485; Heidenheimer v. Blumenkron, 56 Tex. 308.

Article 5939, § 119, of the Statutes, provides partly as follows:

"A negotiable instrument is discharged:

"1. By payment in due course by or on behalf of the principal debtor; * * *

"4. By any other act which will discharge a simple contract for the payment of money."

■ The first paragraph of the statute plainly is not applicable to the facts of this case, for the reason that, at the time the transaction of November 17th occurred, the instrument had not matured, and therefore the alleged payment thereof, by the bank in behalf of Watson, was not in due course. R. S. art. 5937, § .88; 2 Daniel, Neg. Inst. §§ 1233, 1234; 8 C. J. 566, § 789. The fourth paragraph of the statute set out above, does not undertake to prescribe the mode of proving the acts which are there declared to effect a discharge of a negotiable instrument, but leaves the matter of proof to be controlled by the general rules of evidence. It is perfectly clear that the parol testimony relied on by the gin company to prove payment of the instrument by the bank, for Watson, would, if allowed effect, vary the terms of the indorsement contract made at the time, which, as we have seen, cannot be done. In Hall v. Wichita Bank & Trust Co. (Tex. Civ. App.) 254 S. W. 1036, in which case the writ of error was refused, it was decided that paragraph 4 of the above statute did not have effect to prevent proof being made by parol testimony, as at common law, that a negotiable instrument had been novated, thus recognizing that said paragraph has nothing to do with rules of evidence. The question of novation of the indorsement contract of the gin company is not in any wise involved in the present case.

We have carefully considered all the assignments of error presented in the Court of Civil Appeals by the gin company, and find no mer-

it in any of them. We therefore recommend that the judgment of the Court of Civil Appeals, reversing the trial court's judgment, be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.