UNIVERSAL LIFE & ACCIDENT INS. CO.

v.

BARRON et al.

No. 14773.

Court of Civil Appeals of Texas.

Dallas.

April 16, 1954.

Rehearing Denied May 14, 1954.

The Insurance Company denied liability, filing cross-action for cancellation on grounds that the insured, Floyda White, was not in sound health at time of policy issuance; and further, that insured had misrepresented material facts in application for insurance, upon which defendant relied to its detriment in issuing the policy. Upon trial to a jury and their verdict on special issues, a recovery was decreed against appellant in the sum of $1,296.40.

Said jury verdict in summary was as follows (Issues numbered as in charge): (1) Floyda Mae White was in good health on July 2, 1951 (date of policy); (2) on that date, she did *not* represent to the agent of defendant that she had never had any illness which caused her to be confined to bed or hospital, or to be absent from work, or to consult a doctor; (7) on June 13, 1951 (date of application), Floyda Mae White represented to the agent of Universal Life & Accident Company that she was then in good health and free from the effect of any illness; (8) which representation was on a material matter; (9) but was *not* false; (10) that defendant, its agents and employees believed such representation; (11) that such belief as referred to in preceding issues induced such agent and employees to issue the policy; (11-a) assured's representation of good health (issue 7 above) was *not* intentionally made for purpose of inducing defendant company to issue the policy in question; (12) reasonable attorney's fees were fixed at $350.

Appellant claims error in the court's admission of testimony: (1) "to the effect that a previous policy of insurance had been issued upon the life of the insured and was cancelled and exchanged for the policy of insurance in question, because such evidence was immaterial, irrelevant, prejudicial, without support in appellees' pleadings and was the subject of extensive discussion by the jurors during their deliberation and was a determining factor in the verdict reached by the jury"; (2) "of the death certificate of the insured, the fact of death and date of death having previously been stipulated by the parties, because statements on the death certificate as to the cause of

Storey, Armstrong & Steger, Dallas, for appellant.

Harvey C. Ford, Dallas, for appellees.

YOUNG, Justice.

This suit was initiated by Sarah Green Barron, beneficiary, and assignee Funeral Home to collect the proceeds of a life insurance policy, face value $845, together with penalty, interest, and attorney's fees.

death and duration of the diseases causing death were hearsay opinion evidence and were incompetent, prejudicial and irrelevant testimony by the person who prepared and signed the death certificate." Points 3, 4, and 5 complain of the court's error in failing to grant a new trial because the jury's answers to issues 1, 2, and 9 above were without evidence in support, or at least without sufficient evidence; also "contrary to the overwhelming weight of the evidence."

The life policy in question was known as "Industrial," involving weekly payment of premiums. It was dated July 2, 1951; General Provision No. 3 being as follows: "No obligation is assumed by the Company prior to the date hereof, nor unless on said date the insured is alive and in sound health. Should the insured not be alive or not be in sound health on the date hereof, any amount paid to the Company will be returned." No physical examination of the prospect was required; the company relying solely on information contained in the application, i. e., answers of applicant for insurance to certain questions there numbered. In this case, the application signed by Floyda White on June 13, 1951 was attested by the signature, W. S. Jones, "Agent," following the recital, "Applicant seen in person, his answers to the above questions fully recorded and his signature witnessed * * *." Questions and answers, 16, 22, and 23, read: "(16) Are you in good health and free from the effects of any illness or injury? Yes. (22) Who is your doctor? Dr. Davis, Parkland. (23) When and for what did you last consult him? Says child birth." Question (24): "What illness or injury have you ever had which caused you to be confined to bed or hospital, or to be absent from work, or to consult a doctor? Give details here." (Not checked or answered.)

Floyda White died November 13, 1952, aged 21 years, four months. Defendant denied liability on ground that for years prior to issuance of policy assured had been afflicted with a chronic blood deficiency and anemia, manifested by recurrence of excessive bleeding; summed up in autopsy report, records of Parkland Hospital, viz.: "This is the ninth Parkland Hospital admission of this twenty-one year old colored female, who had been followed in Hemotology Clinic for the past three years, with diagnosis of aplastic anemia, and had had numerous diagnostic procedures, and had had a spleenectomy." The same medical record disclosed the following, relative to hospital admissions of assured prior to date of policy: July 12, 1946, discharged August 19, eight blood transfusions, diagnosis "anemia marked," with "menorrhagia" (excessive menstrual discharge); June 8, 1949 to July 5, 1949, diagnosis "Uterine pregnancy delivered (childbirth, a girl now four years of age), and anemia of undetermined idiology," one transfusion; November 3, 1950 to November 22, 1950, diagnosis "anemia due to chonic loss of blood; disturbance of clotting mechanism due to undetermined cause," one transfusion; December 16, 1950 to January 10, 1951, diagnosis "Abnormality of the spleen, disturbance of clotting mechanism due to unknown cause; anemia due to acute loss of blood; anemia due to undetermined cause; decrease in blood platelets." Further admissions to hospital began in February 1952, and finally on November 12, 1952, with diagnosis of "hemorrhagic pneumonitis" (pulmonary hemorrhage), with known aplastic anemia. Removal of spleen, or spleenectomy, was in December 1950. Floyda Mae visited Parkland Hemotology Clinic numerous times during March and April 1951, then on October 26 coming back for a checkup. Sarah Barron, mother of deceased, testified in brief: That for a long time she and daughter had carried small weekly premium policies of insurance with defendant company; an agent on June 13, 1951, having negotiated a cashing-in of existing policies and substitution of new ones, Floyda Mae signing for the policy in suit, weekly payments of 65 cents instead of ten cents as formerly. This witness was present when the application was signed; an agent, Jones, handling the transaction, accompanied by Clyde Mitchell, company supervisor. She said that such agent filled

in the application without asking Floyda any questions save as to birth, height and weight, she then appearing as healthy "as I was." Several others, called on behalf of plaintiffs, testified that during June and July, 1951, deceased was in sound health so far as they could see; did her housework, had a job, making no complaints, gaining weight; knowing nothing, however, about assured's hospital record.

Verdon Belle Perkins, beauty operator, testified to knowing Floyda since childhood, of seeing her regularly during 1950 and '51; that she would come in to get her "hair done," driving a jeep car; did not complain of sickness; appeared to be a healthy person; that she made an appointment with witness for a Friday in November, but passed away the preceding Wednesday.

Clyde A. Mitchell, then a defendant supervisor, testified that he saw Floyda Mae regularly for some five years before her death, having to do with collections on the previous or small policy; that he had talked with her and mother when the larger policy was taken out; and that she appeared to be "O. K."; "Otherwise, we wouldn't have written the application"; that he instructed all agents to ask the several questions covered in application but was not sure that he was present at the June 13 signing. In this connection, R. V. Haney, defendant's Assistant Secretary and Claim Manager, testified that the company relied solely on information carried in the application for insurance in deciding whether or not to issue a policy; further, that on any application where an answer is called for and the space opposite the question is left blank, this would indicate to him that no such condition existed.

Insured's last admission to the hospital was on November 12, 1952, preceded, according to Dr. Miesch, by a cold and sore throat, soon commencing to cough up blood, dying within hours, despite emergency measures.

We will consider the points advanced for reversal of cause in inverse order: (1) There was no evidence adduced to the effect that Floyda Mae on date of application represented to "the agent of defendant Company that she had never had any illness which had caused her to be confined to bed or hospital, or to be absent from work, or to consult a doctor"; and issue 2 could not have been answered other than in the negative. Likewise, in harmony with Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943, and Vann v. National Life & Accident Co., Tex.Com. App., 24 S.W.2d 347, dealing with analogous facts and circumstances, the question of assured's state of health was for the jury; at least six lay witnesses testifying that it was good at time of application and inception of the insurance; with no adverse pathology relating to these intervals. In issuing the instant policy without medical examination of the applicant, defendant company necessarily delegated to its agent the duty and authority to acquire information as to applicant's condition and health; and if the agent, through long acquaintance with assured, presupposed a state of good health in handling the application, thereby failing to elicit answers material to the risk (as was doubtless the case here), nevertheless defendant is bound thereby; the policy presumably having issued on satisfactory information furnished by the agent. "Where the insured makes no representations and the insurer's agent fills out the application without inquiry or of his own knowledge, the company is bound by the application as drawn if the insured has not been guilty of any bad faith." 24 Tex.Jur. 925, sec. 178 (Citing cases.)

(2) No reversible error appears, perforce of admission in evidence of the death certificate showing cause as "pulmonary hemorrhage. Interval between onset and death 9 hr. * * * Conditions contributing to the death but not related to the disease or condition causing death, aplastic anemia, 5 Mo."; and this, despite the fact that date of death had been stipulated. Appellant pled that the insured had died "as the result of pulmonary hemorrhage and anemia"; had introduced Parkland Hospital records in support; all being

·consistent with its asserted defense. Furthermore, the instrument issued from the ·Office of State Registrar, Bureau of Vital Statistics, and admissible under Art. 4477, Rule 54a, Vernon's Ann.Civ.St., making properly authenticated copies of death certificates prima facie evidence of the facts therein stated. Validity of this statutory proviso has been recognized. Texas State Highway Dept. v. Butler, Tex.Civ.App., 158 S.W.2d 878; Southland Life Ins. Co. v. Brown, Tex.Civ.App., 121 S.W.2d 653; American National Life Ins. Co. v. Valencia, Tex.Civ.App., 91 S.W.2d 832.

■ Similarly competent was testimony concerning a previous policy of insurance exchanged for the one in suit. The evidence so objected to simply reflected a history of the entire transaction; and bore upon knowledge by defendant's agents of the insured's condition of health through a long course of dealing. "When an issue of fraud is involved, all testimony having any reasonable bearing upon that issue is admissible and may be considered by the jury in reaching a verdict. Fraud may be proved directly or by circumstances. * * * Conversely a person charged with fraudulent dealing may prove the attending facts in order to show that the entire transaction was open and free from misrepresentation or other invalidating influence." 20 Tex. Jur., Fraud and Deceit, sec. 108, pp.158, 160; Crockett & Sons v. Anselin, Tex.Civ. App., 132 S.W. 99; Brooks v. Long, Tex. Civ.App., 199 S.W. 510.

■ Here we should take note of a paper filed by appellees styled "Written Argument and Additional Authorities," attributing a species of dishonesty to defendant and likening it to a criminal with a past record. Appellant strenuously objects to these and other "patently improper and unprofessional" statements, suggesting that the instrument be stricken from the record. While a written argument may be substituted for oral on date of submission, Rule 423, T.R.C.P., many of the imputations appearing in the paper of appellees, pages 3–4, are unwarranted and improvidently made. A withdrawal of same is requested, otherwise the objections thereto will be sustained.

Appellant's points, upon full consideration, are deemed without merit, with result that the judgment under review is affirmed.

### On Motion for Rehearing

■ It was with particular reference to question 24 of the application (not checked or answered) that in original opinion we stated: "There was no evidence adduced to the effect that Floyda Mae on date of application represented to 'the agent of defendant company that she had never had any illness which caused her to be confined in bed or hospital, or to be absent from work, or to consult a doctor.'" And while the following evidence (detailed by appellant) bears on issue 2 (answered "No" by the jury), the same did not *conclusively* establish that such a representation was made: (1) That the insured signed the application below the statement, "I agree that the above statements, including those on the reverse side hereof, are complete and true as written"; (2) that Ira Green, former husband of appellee, who was present at the time the application was signed, testified specifically that the agent asked Floyda Mae White, "Was she in good health, had she ever had any operations or anything like that?"; (3) further testimony of Mitchell that he had never been at the taking of an application for insurance when all questions on such application were not asked of the applicant; and (4) statement of appellee that the insured signed the application; that she had a high school education and could read and write well, and that she had the opportunity to read over the application before she signed the same.

Otherwise, the points and argument advanced in motion for rehearing, after due consideration, are overruled.